# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3ʳᵈ day of May, two thousand ten,

Present:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,
*Circuit Judges.*



In re Theodore Cox,

Attorney.

08-9050-am

**AMENDED
ORDER OF
GRIEVANCE PANEL** *

By order filed in April 2008, this Court referred Theodore Cox to the Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Cox had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on November 18, 2008. Cox was represented during the Committee's proceedings by Hal R. Lieberman, Esq., of the law firm of Hinshaw & Culbertson. Presiding over the hearing were Committee members Paul C. Curnin, Esq., Eileen M. Blackwood, Esq., and Terrence M. Connors, Esq. In April 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Cox with a copy of the Committee's report, and Cox responded.

In its report, the Committee concluded that there was clear and convincing evidence that Cox

---

 * This order is amended solely to correct the identification of Cox's counsel.

had engaged in conduct warranting the imposition of discipline. *See* Report at 2, 11. After noting the presence of various aggravating and mitigating factors, *id.* at 10-11, the Committee recommended that Cox be publicly reprimanded and subject to certain reporting requirements, *id.* at 11. In his response, Cox stated that he had no objections to the factual or legal determinations in the Committee's report, but requested clarification as to the date of commencement of the reporting requirements recommended by the Committee. *See* Response at 1.

In large part, Cox's referral to the Committee was based on his history of defaulting on this Court's scheduling orders. That situation has improved. A review of this Court's records currently indicates that Cox has faced briefing deadlines in well over 100 cases since he became aware of the Committee's proceeding and has timely filed his briefs in the great majority of his cases. As far as can be determined, his recent defaults are limited to the following cases.

In both *Ben Chen v. Holder*, 09-1506-ag, and *Shun Ting Ke v. Holder*, 07-5078-ag, Cox permitted the briefing deadlines to pass without filing his briefs or taking other appropriate action, causing this Court to issue orders to show cause why the appeals should not be dismissed based on his defaults. *See Ben Chen*, 09-1506-ag, order filed Sept. 14, 2009; *Shun Ting Ke*, 07-5078-ag, order filed Nov. 18, 2008. In both instances, Cox timely responded to the orders and the cases proceeded. Thereafter, however, Cox submitted defective briefs in both cases, which were cured only after the filing deadlines. *See Ben Chen*, 09-1506-ag, entries for Oct. 16, 2009 (defective brief received on deadline) and Oct. 21, 2009 (corrected version received); *Shun Ting Ke*, 07-5078-ag, entries for July 15, 2009 (defective supplemental brief received one day past deadline) and July 21, 2009 (corrected version received). In another case, Cox filed a stipulation to withdraw the case six days after the briefing deadline had passed, without having requested an extension of time or other relief. *See Jin Rong Chen v. Holder*, 09-1265-ag, stipulation received Sept. 22, 2009 (dated one day past deadline for brief). Finally, in *Zou Ya Qing v. Mukasey*, 08-3533-ag, Cox submitted his brief and a motion for an extension of time one business day after the deadline for his brief. *See Zou Ya Qing*, 08-3533-ag, motion and brief filed Nov. 17, 2008. The Court granted the extension and the brief was filed. *See id.*, order filed Nov. 19, 2008. It is our hope that Cox will make further improvements in this area.[1]

---

[1] We also are aware of other cases in which Cox's briefs were received by the Court from one to five days after the deadline, but Cox was not required to file a motion for an extension of time. *See* cases docketed under 09-2155-ag, 08-5597-ag, 08-4191-ag. Since the affidavits of service attached to those briefs indicate that the respondent was served with the briefs on or before the filing deadline, we assume that the briefs were timely filed pursuant to Rule 25(a)(2)(B) of the Federal Rules of Appellate Procedure, although the date of mailing to the Court was not specified in any attachment to the briefs. *See* Rule 25(a)(2)(B) ("A brief or appendix is timely filed ... if on or before the last day for filing, it is: (i) mailed to the clerk by First-Class Mail, or other class of mail that is at least as expeditious, postage prepaid; or (ii) dispatched to a third-party commercial carrier for delivery to the clerk within 3 days."). In future cases, Cox should ensure that the date of mailing to the Court is provided in his service affidavit for purposes of Rule 25(a)(2)(B).

Upon due consideration of the Committee's report, the underlying record, and Cox's submissions, it is hereby ORDERED that Cox is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report and DIRECTED to comply with the reporting requirements described on page 10 of the Committee's report. Regarding the commencement of the reporting requirements: (a) the initial report from Cox is due six months from the date of entry of this order; and (b) that initial report is to cover the time period beginning April 20, 2009 and ending on the due date for the report.

The text of this panel's April 2008 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Cox must disclose this order to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Cox, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: _____

Michael Zachary
Counsel to the Grievance Panel

## APPENDIX 1

### Text of April 2008 order

For the reasons that follow, Theodore Cox is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to further disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Cox was referred to this panel after defaulting twice in *Liang Chen v. Immigration and Naturalization Service*, No. 02-4828-ag – first by failing to file a brief in compliance with the scheduling order, causing the appeal to be dismissed, *see id.*, order filed Aug. 22, 2005, and, later,

3

after reinstatement was granted and the appeal was provisionally withdrawn by stipulation, by failing to timely request reinstatement under the terms of the stipulation, *see id.*, order filed July 20, 2007 (denying reinstatement); *id.*, order filed Oct. 30, 2007 (granting reinstatement and referring Cox to this panel for a determination of whether any disciplinary or corrective measure might be warranted). However, Cox's performance in other appeals, described below, is also relevant to the issue of whether he should be disciplined or subject to other corrective measures.

In August 2005, Cox was sanctioned by this Court for his failure to timely file briefs and for filing false affidavits of service. *See Jin Hua Liu v. Bureau of Citizenship & Immigration Services (BCIS)*, No. 03-4640-ag, order filed Aug.24, 2005 (order entered in five cases). The Court imposed monetary sanctions and warned that future filing defaults, or false affidavits, would result in more severe fines and possible suspension or disbarment. *Id.* In addition, the Court appointed a special master to oversee Cox's practice for two years, with Cox to bear all costs of that appointment. *Id.*; *id.*, order filed Oct. 17, 2005 (appointment order).

In March 2006, Cox was ordered to show cause why he should not be sanctioned or referred to the disciplinary committee for filing a stipulation to withdraw the petition for review in *Keita v. BCIS*, 05-4606-ag, without the petitioner's authorization, and for failing to comply with a scheduling order in *Yu Fang Zhang v. Bureau of Citizen*, 03-4586-ag. *See Keita*, No. 05-4606-ag, order filed Mar. 24, 2006; *Yu Fang Zhang*, No.03-4586-ag, order filed Mar. 24, 2006. Following oral argument, this Court imposed a $1000 sanction in *Keita* and a $3000 sanction in *Yu Fang Zhang*. *See Keita*, No. 05-4606-ag, order filed Jun. 21, 2006; *Yu Fang Zhang*, No.03-4586-ag, order filed Jun. 21, 2006.

During 2006, the special master appointed to oversee Cox's practice submitted four reports concerning Cox's practice; however, issues relating to Cox's payment of the special master's fees led to both the institution of ancillary proceedings to resolve those issues and the suspension of the special master's supervision of Cox's practice. *See Jin Hua Liu*, No. 03-4640-ag, orders filed Dec.26, 2006, Apr.16, 2007, Aug. 31, 2007. Additionally, although the special master's two-year term was to extend to October 2007, it effectively ended upon, or soon after, the filing of her fourth report in November 2006. *See id.*, report of special master, filed Nov. 20, 2006. That last report noted both various improvements in Cox's performance and areas where further improvements were recommended. *Id.* In his response to the fourth report, Cox offered various clarifications and corrections of matters discussed in the report. *Id.*, response filed Dec. 21, 2006; *see also id.*, amended motion to terminate appointment of special master, filed Jan. 31, 2007; special master's response to amended motion, filed Feb. 2, 2007; letter withdrawing amended motion, filed Mar. 8, 2007.

Finally, in *Xai Mei Liu v. Mukasey*, No. 07-1663-ag, the appellant alleged that Cox, while previously serving as her attorney, had failed to file a timely petition for review from an order of the Board of Immigration Appeals, thus waiving her challenge to that order. *See id.*, brief filed Aug. 24, 2007, at 8, 14.

4

Cox currently has over eighty petitions for review pending in this Court, and at least thirty petitions that have been deferred or withdrawn without prejudice pending issuance of the decisions in several cases involving issues that are relevant to the deferred and withdrawn cases (the "related cases"). *See, e.g., Qui Hang Qui v. Mukasey*, No. 07-3877-ag, stipulation and order filed Jan. 16, 2008 (withdrawing petition pending ruling in the cases docketed under 05-6367-ag, 06-0004-ag, 06-2998-ag, and 05-5485-ag). A number of the cases that were withdrawn without prejudice must be reinstated by May 6, 2008, even if decision on the related cases is outstanding. *See, e.g., id.; Bing Hui Lin v. BCIS*, No. 06-1972-ag, stipulation and order filed Jan. 17, 2008; *Zhou Yuan Ni v. BCIS*, No. 06-1705-ag, stipulation and order filed Jan. 9, 2008. Additionally, he has at least twenty-five briefs due in the next several weeks.

We are not aware of any other defaults by Cox since his last default in *Liang Chen*. However, in light of that default, the large number of pending or soon-to-be-pending cases, the matters discussed in the special master's fourth report and Cox's response to that report, and the premature end of the special master's supervision, we are concerned whether Cox is able to fulfill all of his professional responsibilities in this Court or whether new disciplinary or corrective measures are necessary.

Upon due consideration of the matters described above, it is ORDERED that Theodore Cox is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report consistent with Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

The Clerk of Court is directed to serve a copy of this order on both Cox and the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
      Michael Zachary
      Supervisory Staff Attorney
      Counsel to the Grievance Panel

5

## April 2009 Report of the Committee
## on Admissions and Grievances

## REPORT & RECOMMENDATION
### Re: In re Theodore Cox, #08-9050-am

## I. Introduction

By Order dated April 29, 2008, the United States Court of Appeals for the Second Circuit (the "Court's Order") referred Theodore Cox to this Committee, for investigation of his conduct before the Court and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Cox is a very active immigration practitioner, concentrating on Chinese asylum claims, with approximately 150 active circuit court cases, 90% of them in the Second Circuit. Cox was referred to this Committee after defaulting twice in *Liang Chen v. INS*, No. 02-4838-ag—first, by failing to file a brief in compliance with the scheduling order and then by failing to timely request reinstatement under the terms of a stipulation of dismissal. The Court's Order raises several other areas of concern about his conduct, however, including (1) failing to comply with scheduling orders in two other cases (*Jin Hua Liu v. BCIS*, 03-4640-ag, and *Yu Fang Zhang v. BCIS*, 03-4586-ag), (2) filing false affidavits of service in one of those cases (*Jin Hua Liu*), (3) filing a stipulation of withdrawal without his client's authorization in a third case (*Keita v. BCIS*, 05-4606-ag), and (4) failing to file a timely petition for review in a fourth case (*Xai Mei Liu v. Mukasey*, 07-1663-ag). In addition, the Committee learned of two other pending concerns, including (5) according to a BIA judge, filing repetitive motions in front of the BIA in a fifth case, and (6) missing a court date, according to a complaint by replacement counsel in a sixth case.

As a result of his misconduct in *Jin Hua Liu v. BCIS*, 03-4640-ag (failure to file a brief in compliance with the scheduling order and filing false affidavits of service), in August 2005, Cox was sanctioned by this Court, which imposed monetary sanctions and in October 2005 appointed a special master to oversee his practice. The Departmental Disciplinary Committee for the First Judicial Department also privately reprimanded Cox for the same, as well as additional, behavior in this Court. During the special master's appointment, in March 2006, Cox was fined $1000 by

this Court for filing a stipulation of withdrawal without the client's authorization (*Keita*) and $3000 for failing to comply with a scheduling order in another case (*Xai Mei Liu*).

Based on clear and convincing evidence, the Committee concludes that Cox has committed misconduct and that his misconduct warrants a sanction. The Committee recommends that Cox be publicly reprimanded. In addition, Cox should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; (2) an application is made for permission to make a late filing only after the due date has passed; or (3) false affidavits of service have been filed. The following constitutes the Committee's report and recommendation to impose discipline on Cox.

## II. The Disciplinary Proceeding

On May 2, 2008, this Committee issued an Order to Show Cause regarding Cox's conduct as alleged in the Court's referral order. On July 2, 2008, Cox submitted a written response to the Order to Show Cause with additional materials on August 1. On November 10, 2008, Cox submitted pre-hearing documentation to the Committee, and a hearing was held on November 18, 2008 by a sub-committee consisting of Paul Curnin, Terry Connors, and Eileen Blackwood. Patrick Shilling was also present for the sub-committee. Cox appeared with his counsel, Hal Lieberman, and presented four witnesses: Thomas H. Nooter, Esq., Joshua Bardavid, Esq., Peter D. Lobel, Esq., and Prof. Steve Golub, Ph.D. Attorney Lieberman then submitted additional materials requested by the panel on December 2, 2008.

## III. Factual Background

The following facts are taken from court records, Cox's written submissions, and the testimony presented at hearing:

Cox is an experienced immigration practitioner. He graduated from Brooklyn Law School in 1982 and was admitted to practice law in New York State in 1983. He is now admitted in all New York District Courts, all U.S. Circuit Courts of Appeal, and the U.S. Supreme Court. He opened his own practice in 1993, and now has five attorneys, six paralegals, and a secretary working for him. He also contracts with two former associates to prepare appellate briefs for him. Cox estimates that 95% of his clients are Chinese, and about one-third of his practice is in the Circuit Courts, primarily the Second Circuit. He regularly handles pro bono BIA appeals for a Catholic clinic and occasional pro bono juvenile cases for the immigration court. He is a member of the American Immigration Lawyers Association and has presented at a half-dozen CLE programs. About 20 of his cases have resulted in published decisions.

Prior to 2005, Cox and his counsel represent that he had not been the subject of any disciplinary proceedings. In 2004-05, however, he found himself overwhelmed by a confluence of events, both personal and professional. Changes in immigration practice led to a large number of BIA decisions, within a very short time, on cases that had pending for some years, flooding Cox's (and other practitioners') offices with petitions for review to be filed. In the fall of 2004, he asserts he received scheduling notices from the Court on more than 100 briefs due. At the

same time, he was working with his wife, a Chinese refugee, on her asylum proceedings, which were not going well. Before the First Department, he asserted that he was suffering from depression and taking medication at this time. As a result, he fell behind in filing briefs in about 50 cases.

### A. This Court's Prior Sanctions

Cox filed a petition for review of the decision of the BIA in *Jin Hua Liu v. Bureau of Citizenship*, No. 03-4640-ag, in April 2003. The time for filing the petitioner's brief was extended until December 2004, but no brief was filed, although other motions were pending. On February 18, 2005, the Court ruled on those motions and notified Cox that it would be issuing a final briefing scheduling. This order included a warning that "Petitioner is advised that no further delays will be tolerated: failure to comply with this scheduling order will result in dismissal of the petition for review." The petitioner's brief was due May 12, 2005, but was not filed until June 7, 2005, and only after the government had filed a motion for default and request for sanctions for the failure to file the brief. This brief either was not filed with the government, or at least not filed in the time asserted in the certificate of service.

In addition, problems arose with the untimely filing of briefs and untimely service on the government in four other cases--*Huo Qiang Chen*, No. 03-41216, *Shan Wen Zheng*, No. 03-40146, *Yeong Je Li*, No. 02-4185, and *Wu Qian Huang*, 02-4723 (L), 03-40273 (Con). In *Chen*, Cox did not file a brief within the Court-imposed timeline, but filed a motion to file the brief out of time a day after the brief was due. This motion was not served on the government, although it included an affirmation of service signed by Cox. The government only learned of the filing almost a month later when the Court granted the motion. The brief was then filed with the government several days later with the false certificate of service. Cox apparently had defaulted in filing briefs in 33 other cases, some of which were reinstated. He had also filed approximately 50 other false affidavits of service, most in June 2005, some of which were never served on the government. As a result of this conduct, Cox was sanctioned $500 by the Court.

The court dismissed Jin Hua Liu's petition for review and ordered Cox to show cause why he should not be sanctioned. Upon his motion, the petition for review was reinstated on August 24, 2005, and Cox was sanctioned $200. In addition, on October 17, 2005, the Court appointed a special master for two years to ensure that Cox a) complied with all deadlines, b) did not take on an unmanageable workload, and c) was truthful in all certificates of service. Meanwhile, the petitioner's brief in *Jin Hua Liu* was filed on September 27 (one day after the due date of September 26). Jin Hua Liu's petition for review was substantively denied on April 11, 2006.

During this time, in *Keita*, 05-4606, Cox filed a motion to withdraw the petition for review, after a conversation with his client in which the client had indicated he did not want to continue. Cox understood the client to mean that he wanted to withdraw the petition for review, but apparently the client intended to obtain another attorney and not continue with Cox. Cox was utilizing the client's friend as an interpreter, rather than a professional interpreter. This Court issued an order to show cause why Cox should not be sanctioned for moving to withdraw without his client's consent.

This mistaken withdrawal motion came soon after Cox had apparently failed to file the initial brief, had then permitted a default dismissal a year later, and had failed to request

22953626v1

reinstatement for another four months in *Yu Fang Zhang,* 03-4586. It also came at a time when, according to the special master's report, this Court had issued Cox orders to show cause in six other cases (between the end of March and May 1, 2006) why petitions for review should not be dismissed for lack of prosecution.

In June 2006, Cox was sanctioned $1000 in the *Keita* matter and $3000 in *Zhang* after failing to appear at the scheduled oral argument on these orders to show cause. Cox asserts he did not receive notice of the argument, and the special master who was copied on the court's letter confirms that she did not receive it either. Despite this, Cox's motion to reconsider the sanctions was denied, and he paid the fines.

The special master filed four reports with the Court—the first dated February 16, 2006, and the last dated November 20, 2006. The special master's appointment was suspended on December 26, 2006, and remanded to the EDNY magistrate to review a fee dispute between the special master and Cox, noting that "the Court assumes that Cox is aware that his continuing failures timely to abide with his obligations to the Court reflect negatively on his reputation with the Court and may subject his license to practice before the Courts of New York to scrutiny. The Court requests that Cox bring immediately current any defaulted amounts due and pay timely his remaining obligations under the entered Judgment." On August 31, 2007, the court issued its final order to Cox that he bring himself current with the special master.

Cox represents that he has now worked out a payment schedule with the special master, and he is currently paying her approximately $3000 a month through November 2009. He represents that he is current with payments to her on this obligation and submitted a letter from her with his original response confirming that he was current in June 2006. When completely paid, Cox represents that he will have paid the special master approximately $150,000.

B.    **The Special Master's Reports**

The special master issued four reports, which reflect a considerable improvement in Cox's office management and compliance with court orders. In the first report, issued in February 2006, the special master notes that Cox had changed his practice to have briefs and motions date-stamped in the Southern District U.S. Attorney's Office before filing with the Court, thus obviating the need for certificates of service. She did report a number of inaccurate certificates of service in the BIA, immigration courts, and other courts of appeal. In the first four months of her supervision, Cox filed 47 timely and 11 late briefs with this Court, and missed five other deadlines. However, the special master found significant improvement in Cox's management, including an increase in staffing and better management practices.

The second report, issued in June 2006, notes several continuing problems with accurate certificates of service. Eighteen timely and three untimely briefs were filed in this Court, but the special master noted seven cases with problems (e.g., filing requests for extension on the day the brief was due). The orders to show cause in *Keita* and *Zhang* occurred during this time as well. The special master also noted a few problems in other courts with not filing or late filing of briefs. The special master also reported that Cox had significant staff changes, with all three attorneys and a paralegal resigning, and one new attorney and two new paralegals hired.

The third report, issued in August 2006, is somewhat limited by difficulties with Cox's compliance in providing the special master with information, a task he found expensive and

burdensome. In what was submitted, she found no inaccurate certificates of service, and only one untimely brief in this Court, although there were several last-minute withdrawals of appeals. She found a few other problems with timeliness in other fora.

The final report, in November 2006, reflects the breakdown of the relationship between Cox and the special master. The special master noted that she was not receiving the information she needed to make a complete review of Cox's practice, so the problems that she did note stand out. For example, she found three civil cover sheets in which Cox had represented that he was not the subject of any disciplinary action, although the First Department proceedings were pending. She found four inaccurate certificates of service (out of more than 162 filings) in the Second Circuit and a few others in other tribunals. Although these appeared to be mistakes, the special master noted that Cox's "lack of concern for accuracy" continued to trouble her. She reported significant improvement in the timeliness of filing with no late filings. While she found significant improvement in his office management, she was disturbed that he reported to her having 450 active cases, but her office's count of his open cases at the time was 592. She also reported that on occasion when her office called to inquire about a case, she would be told that Cox had no record of its existence, although it was his office that had previously informed the special master about it.

## C. The First Judicial Department's Sanctions

This Court referred Cox to the Appellate Division of the Supreme Court, First Judicial Department of the State of New York, and a petition for discipline was filed on February 16, 2006. The First Department applied collateral estoppel, based on this Court's August 24, 2005, order in *Jin Hua Liu*, 03-4640, and found that Cox had engaged in professional misconduct. It referred the issue of sanctions to Referee Irwin Kahn, who, after a hearing, recommended a private reprimand. A hearing panel of the Departmental Disciplinary Committee accepted that recommendation, and a private reprimand was issued on June 29, 2007.

## D. Issues Since Sanctions Were Determined

Cox was referred to this panel after defaulting twice in *Liang Chen v. INS*, 02-4828-ag. Initially, Cox failed to file a brief in compliance with the court's scheduling order, and the petition for review was dismissed on August 22, 2005. Reinstatement was granted in September 2006, but the petition for review was withdrawn by stipulation, pending the Court's ruling on a legal issue in another case. The stipulation provided that Cox could re-file the case by May 1, 2007, but he did not do so, apparently because he had delegated the re-filing responsibility to a docket manager who did not properly file the reinstatement request. Upon reconsideration, the Court did reinstate the case on October 30, 2007, and a brief was filed. This matter was not included in the First Judicial Department's consideration.

In late 2006, Cox admits that he missed the deadline for filing the petition for review in *Xai Mei Liu*. The BIA had affirmed a determination by the Immigration Judge that Ms. Liu was ineligible for relief under the Convention against Torture on October 31, 2006. Cox had instituted an office procedure in which a paralegal was responsible for filing the petition for review, but she did not do so. Cox apparently did not double check the filing. When he learned of her failure to file the petition for review, he immediately terminated the employee. Cox then referred the matter to a colleague to file a *Lozada* complaint, and the Court denied Ms. Liu's motion to reopen, stating that she was unable to show an appeal would have had any possibility

22953626v1

of success, even if it had been timely filed. Cox represents that the First Department was aware of this situation, but it was not included in his disciplinary case.

From the decisions of the referee and the hearing panel, it also does not appear that the First Judicial Department considered either of the June 2006 sanctions in *Keita* or *Zhang*.

### E.    Cox's Response

Cox readily admits his errors and expresses remorse. Before this panel, as in his prior disciplinary hearings, Cox asserts that his problems began with the procedural changes at the BIA and this Court, which left him with an overwhelming volume of petitions for review (and thus briefs due) in a short period. His trusted associate, Joshua Bardavid, left to take a job with the UN, increasing the pressure on Cox. He was also dealing with his wife's own immigration case. She is a Chinese national and had filed for political asylum. Her application was denied, and Cox was quite overwhelmed in trying to assist her with her appeal. Cox was unable to hire additional staff for a time because he could not afford to do so.

Cox ascribes many of the problems to supervision and office management issues. In *Liang Chen,* Cox claims that the case was not properly reinstated by his docket manager. This individual was an attorney, hired by Cox in 2006 to assist with his compliance with the special master's recommendations. She was assigned to file timely reinstatement letters in *Liang Chen* and other similar cases, but failed to do so. As a result, she has left Cox's firm.

Similarly, in explaining the problem with false affidavits of service on the U.S. Attorney's Office, Cox has represented that he had hired an individual specifically to serve briefs on the Court and opposing counsel. That individual, instead of going directly to the U.S. Attorney's Office after filing a brief with the Court, would apparently save up the briefs and deliver a pile of them to the U.S. Attorney's Office once a week. As a result, the affidavits of service on these briefs were false. Cox asserts that he is aware of this practice occurring five times, although he admits it could have occurred many more times without his knowledge. Cox also testified that he fired this employee immediately (June 2005), but in testimony before the First Department, he admitted that he had admonished the employee a couple of weeks earlier for not properly serving briefs and only terminated him when the U.S. Attorney's office complained. In addition, he has instituted a practice of requiring the individual who completes the service to sign and file the affidavit of service, instead of his signing the affidavit before the service is completed.

Cox admits that he missed the deadline for filing a petition for review in *Xai Mei Liu* in 2007 but attributes this error to a paralegal in his office. This employee was also immediately terminated for not filing the petition for review on time. Cox referred this matter to another attorney, who filed a *Lozada* complaint, including a bar grievance against him. The Disciplinary Committee did not take any action against Cox on this matter. That default resulted in no prejudice to the client apparently, as the Court on reconsideration noted that the client was unable to offer any evidence that her petition for review had any possibility of success.

To ensure that deadlines are not missed, Cox now uses Abacuslaw, a professional database management system, which includes a docket system, calendar, and other case management assistance. He has hired a full time docket manager and now has a total of five other attorneys, six paralegals, a secretary, and two law students, as opposed to the two attorneys

22953626v1

and two-three paralegals he employed in 2004-05.

Cox engages personally in substantial amounts of pro bono work a year, including hundreds of hours for the BIA pro bono panel, Amnesty International, and juvenile cases over the past three years. He has presented approximately six CLE programs for other members of the bar.

Cox and his counsel represent that since June 2007, he has been in compliance with all filing requirements imposed by the court, although he usually makes use of the automatic 30 day extension issued by the clerk. At the time of hearing, his office was filing five briefs that week. The Committee has no evidence that any of these briefs were not filed on time. Certainly, the special master's reports demonstrate a significant improvement in meeting deadlines, although not a perfect record.

At the hearing, Cox presented four character witnesses who testified to his honesty and integrity. They emphasized his commitment to his clients and his very good reputation. Joshau Bardavid, his former associate, corroborated Cox's testimony about the inundation of appellate cases after 2002, and also described changes he has seen Cox make in his office management systems since that time. Cox's attorney represents that he has committed no professional malpractice since June 2007.

Cox has demonstrated substantial improvement in his office management practices and compliance with court deadlines, as a result of the oversight provided by the special master. He recognized the need to create an office culture in which everyone was responsible to make the office function as a "responsible operation."

In January 2008, Cox received an inquiry from the Office of the General Counsel, Executive Office for Immigration Review of the U. S. Department of Justice, reporting a receipt of a complaint that he had engaged in frivolous behavior during representation before the New York Immigration Court and Board of Immigration Appeals, specifically moving to reopen a case for the sixth time on the same basis as previously denied. Cox responded to this complaint and has heard nothing further on the matter.

## IV. Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* F.R.A.P. 46(c) ("a court of appeals may discipline an attorney who

practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder,* 472 U.S. 634, 645, 105 S.Ct 2874, 2881 (1985).

Because Cox is a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Two sections are of particular relevance in this matter. First, the Code states that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." See DR 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3). Second, the Code prohibits conduct that "adversely reflects on the lawyer's fitness as a lawyer." DR 1-102(A)(7); 22 N.Y.C.R.R. § 1200.3(A)(7).

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See e.g., Gadda v. Ashcroft,* 377 F.3d 934, 940 (9th Cir. 2004); *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 133 (2d Cir. 2004); *Matter of Rabinowitz,* 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993). This conduct is also sanctionable under the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), which call for a range of sanctions for various forms of "lack of diligence" and "lack of competence."

According to this Committee's rules, "[a]ny finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). If an attorney is found to have engaged in misconduct, this Committee should consider (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury caused, and (d) the existence of aggravating or mitigating factors. See ABA Standards section 3.0. The Committee may then recommend to the Court's Grievance Panel a range of sanctions from removal from the bar of the Court, suspension from practice before the Court, public or private reprimanded, referral to another disciplinary committee, supervision of a special master,    counseling or treatment, or other disciplinary or corrective measures, including any combination of these actions. Committee Rule 6(a)-(i).

## V. The Alleged Misconduct

### A.    Duty Violated

The evidence demonstrates, clearly and convincingly, that Cox has engaged in professional misconduct subsequent to the behavior for which he was sanctioned by this Court in August 2005 and collaterally by the First Department. This misconduct includes the following:

(1) Cox failed to comply with court scheduling orders and to prosecute diligently in *Liang Chen,* 02-4828 and *Xai Mei Liu,* 07-1663.[1]  In *Liang Chen,* Cox's docket manager (an

---

[1] In *Yu Fang Zhang,* 03-4586, Cox was fined by this Court for failing to file for reinstatement, and although he has given no explanation for his office's failure to file for reinstatement, he asserts this case should have been included in the sanctions imposed in August 2005. As he was fined in June 2006 for this conduct, the Committee concludes that he has already been sanctioned for that failure. Similarly, in *Keita v. BCIS,* 05-4606, in early 2006, Cox filed a
22953626v1

attorney) failed to file for reinstatement of the case in a timely manner in May 2007. In *Xai Mei Liu,* a paralegal failed to file a petition for review in November 2006, apparently after being reminded by Cox to do so. These defaults come on the heels of the prior discipline imposed by this Court and the First Judicial Department, arising out of *Jin Hua Liu et al.,* (in which it was found that during this 2004-05 timeframe, he had failed to file timely briefs in thirty other cases) and fines he received from this Court in June 2006 in *Yu Fang Zhang,* 03-4586, and *Keita,* 05-4606 The special master's reports in 2006 show that although his practices improved, Cox was still having trouble meeting deadlines consistently through the summer of 2006.

(2) Cox filed false affidavits of service in numerous cases. In addition to the case cited by the Court, *Jin Hua Liu v. BCIS,* the First Judicial Department found that in June 2005, he filed 50 false affidavits of service. Although Cox attributes these to a single employee, whom he fired when he discovered the problem was continuing, the special master appointed to oversee his office reported the problem continuing for more than a year after that employee was fired. Cox's explanation that the problem was attributable to a single employee was accepted by the First Department, but a close review of the special master's reports shows that the problem continued long after that employee was fired in June 2005. The special master found inaccurate certificates of service continuing for more than a year after this employee's firing. In fact, she noted Cox's "apparent disregard for the seriousness of an attorney's attestation of fact as the most significant ongoing flaw in his practice" in her February 2006 report and while noting substantial improvement, noted continuing concern even in her final report in November 2006.

In addition, Cox incorrectly testified to this Committee when he said that the problem with filing the false affidavits had not recurred since August 2005. While it had not recurred in this Court, the special master reports numerous irregularities in certificates of service filed in other courts, the BIA, and the immigration courts, including certificates dated from one to five days before actual service (and vice versa) and certificates stating service by express mail when service was made by regular mail (and vice versa). The Committee has no evidence, however, of Cox's having filed a false or inaccurate affidavit of service after the fall of 2006.

The two remaining issues considered by the Committee are not demonstrated by clear and convincing evidence. An immigration court judge raised a question about Cox's filing of repetitive motions before the immigration court, but no action has been taken against Cox in relation to that matter. It does not appear to have been a formal complaint, and Cox has a reasonable explanation for his conduct—that he had been seeking relief for this client under an unsettled theory of law.

The second issue is a *Lozada* complaint raised against Cox by a replacement law firm that he missed a deadline for filing. That matter is apparently still pending before the First Judicial Department, but the Committee does not have evidence to support a finding of misconduct in that matter by clear and convincing evidence.

---

stipulation of withdrawal of a petition for review, in contravention of his client's wishes, apparently because he had misunderstood what his client wished him to do. The client apparently retained other counsel and was able to proceed with the case without prejudice. Cox was fined $1000 for this matter in June 2006, and the Committee has no evidence this problem has recurred; therefore, the Committee concludes that he has already been sanctioned for that conduct as well. That both matters occurred just months after this Court's initial August 2005 sanctions, however, concerns the Committee.

## B.    The Lawyer's Mental State

No evidence exists that Cox engaged in any of the behavior cited above due to a desire for personal gain or with an intention to fail in his duty to his client. He apparently missed deadlines because of an overload of cases during a particular period of time, as well as flawed office supervision and practices. He has had a repeated problem with staff oversight causing delinquencies, but the errors appear to arise out of carelessness or overwork, not intentional acts. A disturbing element, however, is Cox's apparent failure to recognize the importance of accuracy in his certificates of service and his representations to this Committee about them.

## C.    The Actual or Potential Injury

There appears to have been little actual injury to any client from Cox's conduct for which he has not been previously sanctioned, although the potential for injury was great. Liang Chen's petition for review was reinstated, and Cox continued as his attorney. Xai Mei Liu's case was ultimately dismissed, but the Court specifically found that she was not prejudiced. Keisha found another attorney and apparently pursued his case. Yu Fang Zhang's petition for review was reinstated.

## D.    Aggravating and Mitigating Factors

The primary mitigating factor in this case is that Cox has paid dearly for some of his conduct. He has paid fines to this Court in at least four cases for a total of $4700. He has incurred almost $150,000 for the special master and is continuing to pay off her bill in the amount of $3000 per month. He has been privately reprimanded by the First Judicial Department. Thus, he has already been punished for most of his misconduct before the Court.

Cox's problems prior to 2006, such as in the *Yu Fang Zhang* case, stem from a confluence of factors, including the changes in immigration practice from the wave of petitions for review in 2002 to the elimination of CAMP meetings in 2004 and his wife's refugee status. These factors went a long way to convince the First Department to issue only a private reprimand.

Since 2006, the problems have been attributable to the difficulty of supervision in a high-volume practice that requires strict compliance by every participant. Character testimony speaks to Cox's reputation for integrity. He is a respected member of the immigration bar. He engages in pro bono service and has conducted CLE programs for his peers. His office handles a huge volume of cases, and the problems identified here represent a small percentage of his total cases. He apparently provides competent representation to many petitioners and has been involved in both precedent-setting and reported cases.

As an aggravating factor, Cox is an experienced practitioner who continued to fail to adequately supervise employees to ensure zealous representation of his clients after he was punished by this Court. For example, he apparently did not double check that his docket clerk or his paralegal actually filed the requests for reinstatement and did not at the time have a duplicate system operating to provide reminders. Most disturbing, however, was his representation to this Committee that the inaccuracies in his certificates of service were entirely due to an employee and were fully resolved when that employee was fired in June 2005. The reports of the special

22953826v1

master demonstrate continuing inaccuracies for more than a year later. Additional aggravating factors include his prior multiple disciplinary offenses and the vulnerability of his clients.

## VI. Recommendation

The Committee finds, based on clear and convincing evidence, that Cox has violated his duty of diligence to his clients by neglecting legal matters entrusted to him. The record shows that after having been disciplined in 2005 by this Court, and even while disciplinary proceedings were pending in the First Department in 2007, he again failed to properly supervise his staff to ensure that his clients were adequately represented. While alone these incidents may not have been sufficient to warrant discipline, their occurrence so soon after the prior discipline is disturbing.

Cox has clearly made an attempt to correct his management issues, and he has had no recurrence, to the Committee's knowledge, since 2007. He has a very active practice before this Court, and it appears that his representations since 2007 have been competent and timely. Nevertheless, Cox's recidivism cannot be ignored.

The Committee concludes that discipline is warranted. Cox should be publicly reprimanded for his conduct. The Committee would also recommend that Cox be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; (2) an application is made for permission to make a late filing only after the due date has passed; or (3) a false affidavit of service has been filed. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Cox and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.