In the Matter of JACOB RABINOWITZ, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 20, 1993

**APPEARANCES OF COUNSEL**

*Jeremy S. Garber* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Howard Benjamin* of counsel *(Ellis Funk Eidman & Benjamin, P. C.,* and *Nicholas C. Cooper,* attorneys), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Jacob Rabinowitz was admitted to the practice of law in New York by the First Judicial Department on November 26, 1951. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On or about January 3, 1992 respondent was personally served with a notice and statement of charges, dated December 26, 1991. The Committee charged that respondent was guilty of unethical practices and professional misconduct because he neglected the personal injury and medical malpractice matters of three different clients, misrepresented to the clients the status of their cases, failed to turn over one client's case file to her new attorneys and gave an intentionally misleading response to the Committee regarding his handling of the case of another client.

In 1977, Lenora Harris retained respondent to pursue personal injury claims for her and her son arising out of an automobile accident in Brooklyn in September 1977.

Respondent's process server served the owner of the car that allegedly hit the taxi carrying Mrs. Harris and her son, by substituted service in June 1978; however he was not able to serve the driver. The process server's form indicated that service could not be made on the driver because he was not known at the address given. No other evidence was presented to indicate any further attempts were made to serve the driver. Respondent however, contended that he believed the driver was evading service and that the Statute of Limitations against him was, therefore, tolled.

The owner did not answer the complaint. Respondent advised the owner and his insurer that, if they did not answer, he would take a default judgment. However, respondent never sought a default judgment against the owner. He also failed to file a claim under the State uninsured motorist provision.

From February 1979 until March 1987, when Mrs. Harris retained new counsel, respondent did not take any further steps to prosecute Ms. Harris' claims. However, he continued to assure her that he was actively pursuing her claims.

Respondent claimed that no default judgment was taken against the owner of the vehicle since respondent was convinced that the case did not meet the no-fault "threshold" and therefore an inquest would be unsuccessful. This claim how-

ever was refuted by respondent's own words which were set forth in the summons and complaint dated June 7, 1978, i.e., "Plaintiffs have sustained a serious injury as defined in subdivision 4 of Section 671 of the Insurance Law or economic loss greater than the basic economic loss as defined in subdivision 1 of Section 671 of the Insurance Law".

Respondent also asserted that Ms. Harris had made no attempt to communicate with him concerning her case in the four-year period between 1983 and 1987 and that he made no representations to her with respect to the status of her case. Several letters, however, were produced at the hearing which contradicted these claims by respondent.

Thus, on February 7, 1983 respondent wrote to Ms. Harris' union which was dunning her for reimbursement of disability benefits paid as a result of the accident, and on April 13, 1984 respondent again wrote to the union on behalf of Ms. Harris to have her benefits reinstated after Ms. Harris had met with him in his office to discuss the case.

In 1987, respondent failed to turn over his file relating to Ms. Harris to her new counsel, forcing him to obtain a court order directing that respondent turn over the file. Even after successor counsel obtained a court order in March 1988, respondent did not turn over his original file, but an incomplete file which did not include the summons and complaint. Respondent did not locate the original file until after the hearings in this disciplinary matter began.

Respondent claimed that the file had become misplaced sometime after 1982 and appeared on the first hearing date on February 24, 1992. Respondent however gave misleading and inconsistent testimony at the hearing concerning this file. When the file was produced on February 24, 1992, it included several pieces of original correspondence from Ms. Harris' labor union from the year 1983 as well as correspondence between respondent and Ms. Harris from 1983 and 1985. Respondent could not explain how an original letter dated April 30, 1985 appeared in a file that was lost sometime after 1982. The presence of the 1985 letter in the missing file also undermined respondent's suggestion that the file became misplaced during an office move in 1984 from 535 Fifth Avenue to 21 East 40th Street.

On or about April 21, 1981, Anita Weinstein retained respondent to pursue a medical malpractice claim against Manhattan Eye, Ear and Throat Hospital.

Respondent served a summons and complaint on Manhattan Eye, Ear and Throat Hospital in August 1982. The hospital answered and served a demand for a bill of particulars in September 1982. In January 1984 the hospital moved to preclude Ms. Weinstein from offering medical evidence at the trial, based on respondent's failure to serve a bill of particulars. The court extended respondent's time to serve a bill until mid-May. Respondent claimed that he was unable to complete the bill until June 1984 and the hospital moved again to preclude.

In mid-July 1984, respondent submitted his own affirmation in support of a cross motion for permission to file a late bill alleging that Ms. Weinstein's malpractice claim had merit. He attached a letter from Dr. Steven A. Teich dated July 27, 1984 which stated that Ms. Weinstein's acute angle closure glaucoma was very likely caused by the eye drops she received at the hospital.

On August 13, 1984, Justice Maresca denied the hospital's motion for a final order of preclusion and dismissal of the action and granted respondent's cross motion compelling the defendant to accept the bill of particulars. Respondent, however, claimed that he was unaware of this decision and he took no further steps to prosecute Ms. Weinstein's claim from July 1984 through August 1988.

Respondent also claimed that Mr. Mermelstein, who left respondent's office sometime in 1987, was primarily responsible for opposing the hospital's motion to dismiss. Mr. Mermelstein testified at the hearing that the *Weinstein* files were always in respondent's possession, both while he worked in respondent's office and after he left his employ in April 1987. Mr. Mermelstein also stated that he never worked on the *Weinstein* file after April 1987 nor did he take the *Weinstein* file with him inadvertently.

In August 1988 the hospital's counsel served a 90-day notice requesting that respondent file a note of issue. Although respondent claims that he did not receive this notice, a receipt for it was signed by someone on his staff. Since respondent did not respond to the 90-day notice, in March 1989, the hospital moved to dismiss the case based on his failure to prosecute. Respondent did not submit opposing papers and the case was dismissed in August 1989.

While respondent first claimed that the motion to dismiss was never brought to his attention and that the decision

granting the motion was not contained in his file, he later conceded that an April 4, 1989 cover letter from the opposing attorneys in the *Weinstein* lawsuit informing respondent of the April 24, 1989 motion to dismiss was indeed in the *Weinstein* file. Respondent also conceded that the demand for the note of issue (the "90-day notice") from opposing counsel was received by his office in 1988, but he claimed ignorance because he was away in Denver on trial at the time.

In 1990 Ms. Weinstein asked the Committee to assist her in obtaining a response from respondent concerning the status of her case. The Committee contacted respondent and asked him to report on the matter. Respondent responded to the Committee in a letter dated February 5, 1991. Respondent told the Committee that Ms. Weinstein's case had been dismissed in 1984, implying that he had good reason not to prosecute the case after that date and concealing Judge Maresca's decision. In addition, respondent referred to two medical opinions questioning the merits of Ms. Weinstein's malpractice claim and failed to make any reference to the opinion of Dr. Teich dated July 27, 1984 which stated that Ms. Weinstein's claim had merit. Respondent claimed that he had no recollection of the Teich letter when he wrote his letter to the Committee in February 1991 and that he never purported to give a complete response to the Committee in February 1991 since he stated that his letter was not his best effort at rendering a complete report and that he was attempting to find additional portions of the file.

The Hearing Panel, however, found that since respondent had personally solicited this letter from Dr. Teich and had attached it to his own affirmation to the Supreme Court in order to demonstrate the merit of Ms. Weinstein's claim, they could only infer that he deliberately concealed this letter from the Committee in order to give the misleading impression that the case had no merit.

At the conclusion of the hearing on April 6, 1992, the Hearing Panel sustained the four charges relating to Lenora Harris and the three charges relating to Anita Weinstein. They declined to sustain six charges relating to James Alston.

On June 8, 1992, the Hearing Panel issued its written report recommending that respondent should be suspended from the practice of law for a period of three years.

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the

recommended sanction of suspension for a period of three years.

Respondent cross-moves for an order confirming the Hearing Panel's report to the extent that it does not sustain the charges relating to the James Alston matter; disaffirming the report to the extent that it sustains the charges relating to the *Harris* and *Weinstein* matters on the grounds that such findings are contrary to the law and against the weight of the evidence; disaffirming the report on the grounds that the Panel committed prejudicial conduct; referring the matter to a Special Referee for a hearing de novo; and reopening the record to permit respondent to submit character witness testimony.

Respondent contends that the Hearing Panel was predisposed to treat respondent in an unfavorable light. He objects to the fact that at the second hearing on March 2, 1992, before the presentation of respondent's case, the Hearing Panel Chair requested briefs from both sides on the issue of sanctions.

Respondent contends that by asking for the sanctions briefs prior to making findings of fact, the Panel had already reached a conclusion and could not have been objectively reviewing the evidence.

Finally, respondent argues that in pressing for a swift completion of the proceedings, the Hearing Panel denied him the opportunity to present character witnesses and as such, the hearing should be reopened to enable him to present testimony in mitigation. According to respondent's counsel, upon completion of the charges stage on April 6, 1992, the Hearing Panel deliberated and then announced its decision on the record. The Panel then heard from staff counsel regarding prior discipline and closed the proceedings at 6:25 P.M. without affording him the opportunity to present character witnesses.

With respect to respondent's claim that the Panel Chair's request for briefs on sanctions prior to the conclusion of the hearing was prejudicial, we agree with the Committee's assertion that the request was intended to achieve an efficiently focused disciplinary proceeding and did not reflect any predetermination of outcome. The respondent has failed to show any predisposition on the part of the Panel to rule against him before receipt of all the evidence. Even if the Panel's request for a sanctions memorandum is deemed an irregularity in procedure, pursuant to 22 NYCRR 605.1 (b) the Committee

will not hold any action of the Hearing Panel invalid by reason of any nonprejudicial irregularity.

Further, the Hearing Panel never denied respondent any opportunity to present character witnesses. The Hearing Panel expanded the number of scheduled hearing dates from three to five in order to hear relevant testimony and argument. Respondent testified extensively as to his own background, family, illnesses, community service and legal accomplishments, all of which was clearly mitigation testimony. In addition, respondent brought to the Hearing Panel's attention, in mitigation, copies of 17 decisions where he claimed to have achieved significant results. Respondent also adopted staff's witness, Sol Mermelstein, Esq., who had formerly worked in respondent's office, as a character witness on cross-examination and elicited favorable testimony. Most significant, however, is the fact that when the Hearing Panel asked respondent's counsel whether he intended to bring in other mitigation testimony, he responded in the negative. Thus, the record is clear that respondent could have introduced character witnesses during the hearing, but chose not to do so.

Respondent's request to reopen the record to permit him to submit character witness testimony also should have been made earlier. Section 605.16 (a) (1) of the rules of this court (22 NYCRR) provides in pertinent part as follows: "(1) *Application to Reopen.* No application to reopen a proceeding shall be granted except upon the application, *prior to the filing by the Hearing Panel of its report,* of the Respondent and only upon good cause shown". (Emphasis added.)

In the case at bar, respondent's application which is being made for the first time in his cross motion, is untimely since the Hearing Panel filed its report on June 8, 1992. In addition, respondent has failed to establish good cause for reopening the proceeding since, as noted, he was afforded the opportunity to present character witnesses at the hearing and he did not do so.

A review of the evidence presented to the Hearing Panel indicates that there is ample support for the Hearing Panel's finding that respondent is guilty of neglect of two legal matters, in violation of Code of Professional Responsibility DR 6-101 (A) (3); misrepresenting the status of a legal matter to his client Ms. Harris and providing misleading information to the Committee, in violation of DR 1-102 (A) (4); failing to comply with a court order to transfer Harris' file to her new attorneys

which constitutes conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) and engaging in conduct which reflects adversely on his fitness to practice law in violation of DR 1-102 (A) (6).

The sanction generally imposed upon an attorney for neglect of legal matters where there is no prior disciplinary record is typically a public censure. *(See, Matter of Kraft,* 148 AD2d 149; *Matter of Richman,* 102 AD2d 403.)

A period of suspension, however, has been imposed upon attorneys for neglecting legal matters when those attorneys had received prior admonitions. *(See, Matter of Kovitz,* 118 AD2d 285 [one-year suspension for a lawyer with four prior admonitions who did no work on a personal injury claim for 14 years and until he learned that the client had complained to the Disciplinary Committee]; *Matter of Forman,* 117 AD2d 71 [one-year suspension for attorney with two prior admonitions who neglected five legal matters]; *Matter of Gruder,* 109 AD2d 242 [lawyer with five prior admonitions suspended for one year for neglecting five cases]; *Matter of Brade,* 100 AD2d 217 [one-year suspension for lawyer who, despite four prior admonitions for neglect, persisted in his dereliction of professional responsibility by neglecting two more personal injury matters].)

However, in *Matter of Pravda* (96 AD2d 34), a three-year suspension was imposed upon an attorney who neglected an estate matter and a personal injury matter and misled the clients in each case concerning the status of the matters. Pravda had previously been admonished for neglecting a case and misleading a client as to its status; and censured for unnecessarily delaying the prosecution of a divorce action, procrastinating in pursuing a negligence action, and for misleading his clients as to the status of their cases.

In the case at bar, respondent has been admonished on six prior occasions. Four of the admonitions (which concerned six matters) involved charges of neglect of legal matters almost identical to those involved here. As a result of this prior disciplinary record, we conclude that a term of suspension is clearly warranted in this case. While a term of suspension of less than three years may have otherwise been warranted, respondent's lack of candor with the Disciplinary Committee and the Hearing Panel is an aggravating factor which justifies the imposition of a lengthier term of suspension.

With respect to the *Harris* matter, respondent was unwill-

ing to accept personal responsibility for the conduct of that litigation. He belittled the merits of the case despite his own words in the pleadings and affirmations which indicated otherwise; and his testimony at the hearing concerning the *Harris* file which he claimed was missing for several years was inconsistent and for the most part incredible. Many of his assertions were belied by the documentary evidence presented to the Hearing Panel.

With respect to the *Weinstein* matter, respondent misled both the client and the Committee concerning the status of the case; belittled the merits of the case despite his affirmation and a letter from a doctor to the contrary; and gave inconsistent and incredible testimony to the Panel concerning his omission of the doctor's letter in his correspondence with the Committee as well as his alleged unawareness of Judge Maresca granting him permission to file a late bill of particulars and of the subsequent motion by the hospital's counsel to dismiss the action. Moreover, at various times throughout these proceedings, respondent blamed his clients, his colleagues, his employees and his filing system for the problems that resulted in these cases.

In view of this lack of candor, the serious charges which have been sustained and respondent's prior disciplinary record, we find the Hearing Panel's recommendation that respondent be suspended from the practice of law for a period of three years to be appropriate.

Accordingly, respondent's cross motion for an order disaffirming the Hearing Panel's findings with respect to the *Harris* and *Weinstein* matters; referring this matter to a Special Referee for a hearing de novo; and reopening the record to permit him to submit character witness testimony is denied and the Committee's application is granted; the Hearing Panel's report confirmed and the respondent suspended from the practice of law for a period of three years and until further order of this Court.

MURPHY, P. J., WALLACH, ROSS, ASCH and RUBIN, JJ., concur.

Cross motion for an order, *inter alia,* disaffirming certain of the Hearing Panel's findings and for other relief denied, the application of the Departmental Disciplinary Committee granted and respondent is suspended for a period of three years, effective May 20, 1993, and until the further order of this Court.