# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of May, two thousand ten.

PRESENT:
>    José A. Cabranes,
>    Robert D. Sack,
>    Richard C. Wesley,
>        *Circuit Judges.*



07-9085-am

In re Jorge Guttlein,

            Attorney.

**ORDER OF
GRIEVANCE PANEL**

FOR JORGE GUTTLEIN:        Richard M. Maltz, Esq., New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and Jorge Guttlein

is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report.

By orders filed in December 2007 and March 2008, this Court referred Guttlein to the Committee for investigation of the matters described in those orders and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Guttlein had the opportunity to address the matters discussed in the Court's referral orders and to testify under oath at a hearing held on September 19, 2008. Guttlein was represented during the Committee's proceedings by Richard M. Maltz, Esq. Presiding over the hearing were Committee members Paul Curnin, Esq., Terrence M. Connors, Esq., and Eileen M. Blackwood, Esq. In May 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Guttlein with a copy of the Committee's report, and Guttlein responded.

In its report, the Committee concluded that there was clear and convincing evidence that Guttlein had engaged in conduct warranting the imposition of discipline. See Report at 1, 10. After noting the presence of various aggravating and mitigating factors, id. at 10, the Committee recommended that Guttlein be publicly reprimanded and subject to certain reporting

requirements, *id.* at 11-12. In his response, Guttlein does not take issue with any of the Committee's factual findings, but requests that a private, rather than public, reprimand be imposed and that certain of the recommended reporting requirements be modified. *See* Response at 1-5.

Guttlein's referral to the Committee was based on his history of defaulting on deadlines set by this Court and his deficient briefing in one case. Guttlein's compliance with this Court's deadlines has improved. A review of this Court's records indicates that, since September 1, 2008, Guttlein has had 13 open cases in this Court and has complied with the applicable deadlines in most of them. As far as can be determined, his recent defaults are limited to the following three cases.

In *Al Muntasr v. Mukasey*, 08-0995-ag, Guttlein submitted his brief three days after the July 2009 deadline set in this Court's scheduling order.[1] *See Al Muntasr*, 08-0995-ag, order filed June 3, 2009 (setting deadline of July 3, 2009 for brief); entry noting receipt of brief on July 6, 2009; brief filed Aug. 6, 2009 at 31 (affidavit of service for brief, noting delivery to Court

---

[1] The July 2009 default in *Al Muntasr* was preceded by a June 2008 default. *See Al Muntasr*, 08-0995-ag, order filed May 15, 2008 (setting June 2008 deadline for brief); government motion filed Aug. 22, 2008 (requesting dismissal based on petitioner's failure to file brief); response to motion filed Sept. 3, 2008, affirmation at ¶¶ 3-8, 10 (noting law office's mishandling of scheduling order). However, since the June 2008 default preceded the Committee's hearing and was discussed by Guttlein in his post-hearing submission to the Committee, we do not consider it in our review of Guttlein's recent history.

by hand on July 6, 2009). In *Hasan v. Holder*, 08-4756-ag, Guttlein failed to timely file Form C/A, causing this Court to issue an order to show cause why the appeal should not be dismissed based on his default. *See Hasan*, 08-4756-ag, order filed Oct. 16, 2008. After Guttlein timely responded to the order and submitted the missing form, the case proceeded. *See id.*, responses filed Oct. 21 and 23, 2008. In *Rahman v. Mukasey*, 08-1484-ag, Guttlein successfully moved to file his reply brief out of time, stating that the former associate who had drafted the opening brief had failed to discuss a relevant precedent and, after that associate's departure from the firm, the case was not reassigned to another associate. *See Rahman*, 08-1484-ag, motion filed Sept. 24, 2008, at 1-2.

Additionally, the quality of Guttlein's briefing was called into question in one recent case. In *Mejia-Carrasco v. U.S. Department of Justice*, 08-4136-ag, the Court found that Guttlein had waived any challenge to the immigration judge's adverse credibility determination, which stood as a valid basis for the agency's denial of relief. *See Mejia-Carrasco*, 08-4136-ag, brief filed Feb. 3, 2009; order filed Aug. 31, 2009, at 2-3. The Court noted that Guttlein's

> only mention of the IJ's credibility determination is his somewhat baffling assertion that the IJ's credibility determination was not sufficiently explained because the IJ's oral decision was not initially included in the record. He does not assert that the absence of the oral decision from the record

4

prevented him from challenging the IJ's credibility determination or that he lacks a copy of that decision. Moreover, once the government provided an amended certified administrative record that included the IJ's decision, [Guttlein] made no effort to submit a revised brief addressing the IJ's explicit adverse credibility determination.

*Id.* at 3 (footnote omitted). It is our hope that Guttlein will make further improvements in the above-noted areas.

Upon due consideration of the Committee's report, the underlying record, and Guttlein's submissions, it is hereby ORDERED that Guttlein is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report and DIRECTED to comply with the reporting requirements described on pages 11 and 12 of the Committee's report.

We deny Guttlein's request to impose a private reprimand. Guttlein's misconduct included the filing of a petition for review in this Court without a good faith basis for believing any nonfrivolous issue might be raised, *see* Report at 7, 10, failing to address the dispositive issue in that same case, *see id.*, at 7-8, and failing to comply with numerous scheduling orders, which caused both the dismissal of many cases based on his defaults, and significant inconvenience to the judges and staff of this Court, *see id.*, at 8-10. Additionally, while no concrete prejudice to his clients or others has been shown, his pattern of misconduct created a significant risk of prejudice. Although Guttlein stated that most of the defaulted cases were not pursued

due to the clients' abandonment of their cases or the clients' agreement to discontinue, Guttlein unsuccessfully requested reinstatement of several of the dismissed cases. *See* cases docketed under 03-4394, 05-1515, 05-3398, 06-4989, 06-5791. This suggests that he and/or his clients believed that those cases were worth pursuing and that, at the very least, the clients may have been prejudiced by the forfeiture of their right to review of their cases by Article III judges. *See, e.g.*, *Saldarriaga v. U.S. Department of Justice*, 05-3398-ag, motion to reinstate filed June 28, 2006, affirmation at ¶ 9 ("the instant case raises important issues and should be considered on its merits"). Although we acknowledge the mitigating factors found by the Committee, we find that Guttlein's misconduct warrants at least a public reprimand.

We also decline to modify the reporting requirements to relieve Guttlein of the need to report on his practice before federal administrative agencies. In the present case, we view Guttlein's ability to properly handle his administrative agency caseload as relevant to his ability to meet his professional obligations to this Court. As a practical matter, an attorney who cannot meet his professional obligations in other venues bears watching in this Court. As an ethical matter, the Court may legitimately question whether such an attorney should continue to possess this Court's imprimatur obtained through

6

membership in its bar. *See Theard v. United States*, 354 U.S. 278, 282 (1957)("The power of disbarment is necessary for the protection of the public in order to strip [an attorney] of the implied representation by courts that [an attorney] who is allowed to hold himself out to practice before them is in 'good standing' so to do."); *In re Jaffe*, 585 F.3d 118, 121 (2d Cir. 2009)("even where 'discipline' is not appropriate, the Court may nonetheless determine, based on an attorney's prior behavior, that she will be unable to conform her future conduct to expected professional norms, and, as a result, that her ability to practice in this Court should be barred as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice"). In any event, as exemplified by *Porras v. INS*, 06-3067-ag, where Guttlein's conduct before both the Board of Immigration Appeals and this Court was at issue, we see a close relationship between Guttlein's performance before that agency and his performance here.

Finally, we direct Guttlein to file the periodic reports described in the Committee's report even if he has no defaults to report.

The text of this panel's December 2007 and March 2008 orders and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes.

7

Guttlein must disclose this order to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Guttlein, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:   Michael Zachary
      Counsel to the Grievance Panel

## APPENDIX 1

### Text of December 2007 order

For the reasons that follow, Jorge Guttlein is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. See Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since September 2005, this Court has dismissed 32 of the 50

8

petitions for review for which Guttlein was counsel of record for the petitioners, based on the petitioners' failure to comply with this Court's scheduling orders. *See* Second Circuit cases docketed under 03-4107; 03-4394; 03-40429; 03-40942; 04-0913; 04-4127; 04-4829; 04-4957; 04-5128; 04-5726; 04-5861; 05-0245; 05-0978; 05-1243; 05-1515; 05-2072; 05-2467; 05-3519; 05-3398; 05-5218; 05-5280; 05-5791; 05-6073; 05-6307; 05-6642; 05-6718; 06-0990; 06-2001; 06-3363; 06-4989; 06-5791; 07-0464. This Court also has dismissed three additional petitions for review for which Guttlein was counsel of record for the petitioners, based on the petitioners' failure to file form C/A pursuant to this Court's Civil Appeals Management Plan. *See* Second Circuit cases docketed under 05-4957; 06-1247; 06-2109. This Court's records for the cited cases do not indicate that, prior to the respective deadlines for filing of the briefs or forms, Guttlein requested an extension of time to comply, a stay of proceedings, leave to withdraw as counsel, or withdrawal of the appeal.

Upon due consideration of the matters described above, it is ORDERED that Jorge Guttlein is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
Michael Zachary
Counsel to the Grievance Panel

## APPENDIX 2

### Text of March 2008 order

By order entered in December 2007, Jorge Guttlein was referred to this Court's Committee on Admissions and Grievances for investigation of the matters described in that order. Since that time, additional information regarding Guttlein has come to the attention of this panel.

First, in an order filed on January 23, 2008, in *Porras v. INS*, 06-3067-ag, the Court stated the following:

We are troubled by the poor quality of Porras's brief in this case. Attorney Jorge Guttlein represented Porras both before the agency and in this

9

Court. Here, Guttlein submitted a brief of poor quality that, *inter alia*, did not address the actual basis for the BIA's decision. Additionally, Guttlein's failure to exhaust Porras's application for asylum, withholding of removal, and CAT relief deprived Porras of the opportunity to meaningfully challenge the IJ's denial of this relief. Accordingly, we transfer the matter of Guttlein's conduct in this case to this Court's Grievance Panel for its determination of whether the matter should be referred to the Court's Committee on Admissions and Grievances.

*Porras v. INS*, 06-3067-ag, order filed Jan. 23, 2008, at 4.

Second, in an order filed on February 13, 2008, in *Vargas-Gonzalez v. United States Department of Justice*, 05-3562-ag, the Court granted the motion for reinstatement filed by Guttlein despite the untimeliness of the request. The order states the following on the subject of Guttlein's untimeliness:

> [T]he records of this Court indicate that the tardiness of the appellant's counsel, Jorge Guttlein, in the present appeal was not an isolated incident, as he has failed to meet deadlines in a number of other cases in which he is counsel of record. The issue of whether that history of delay constitutes sanctionable misconduct is transferred to this Court's Grievance Panel for such action as it deems advisable under the circumstances.

*Vargas-Gonzalez v. United States Department of Justice*, 05-3562-ag, order filed Feb. 13, 2008, at 1-2. Neither *Porras* nor *Vargas-Gonzalez* was mentioned in the December 2007 referral order.

Upon due consideration, it is ORDERED that the additional information described above is referred to this Court's Committee on Admissions and Grievances for its consideration in conjunction with the information provided in this panel's December 2007 referral order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
By:_____
        Michael Zachary
        Counsel to the Grievance Panel

10

May 2009 Report of the Committee
on Admissions and Grievances

REPORT & RECOMMENDATION
Re: In re Jorge Guttlein, # 07-9085-am

## I. Introduction

By orders dated December 18, 2007 and March 10, 2008, the United States Court of Appeals for the Second Circuit (the "Court") referred Jorge Guttlein to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Guttlein primarily practices immigration and criminal law (and the intersection of the two). The Court's two referral orders raise two principal areas of concern. First, the Court has dismissed several petitions for review for which Guttlein was counsel of record for failure to comply with scheduling orders. Second, the Court recently criticized Guttlein's brief, which failed to address the basis for the Board of Immigration Appeals (the "BIA") ruling from which his client was appealing.

The Committee concludes that Guttlein has committed misconduct and that his misconduct warrants a sanction. The Committee recommends that Guttlein be publicly reprimanded. In addition, Guttlein should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. The following constitutes the Committee's report and recommendation to impose discipline on Guttlein.

## II. The Referral Orders

The Court initially referred Guttlein to the Committee by order dated December 18, 2007 ("Referral Order I"). Referral Order I noted that between September 2005 and the date of Referral Order I, the Court had dismissed 32 of 50 petitions for review for which Guttlein was counsel of record for the petitioners. These dismissals were the result of the petitioners' failure

1

to comply with the Court's scheduling orders.[1] According to Referral Order I, the Court also had dismissed three additional petitions for review for which Guttlein was counsel of record, based on the petitioners' failure to file form C/A pursuant to the Court's Civil Appeals Management Plan.[2]

In a subsequent order dated March 10, 2008 ("Referral Order II," and together with Referral Order I, the "Referral Orders"), the Court again referred Guttlein to the Committee. According to Referral Order II, in an order filed on January 23, 2008 in *Porras v. INS*, 06-3067, the Court stated:

> We are troubled by the poor quality of Porras's brief in this case. Attorney Jorge Guttlein represented Porras both before the agency and in this Court. Here, Guttlein submitted a brief of poor quality that, *inter alia*, did not address the actual basis for the BIA's decision. Additionally, Guttlein's failure to exhaust Porras's application for asylum, withholding of removal, and CAT relief deprived Porras of the opportunity to meaningfully challenge the IJ's denial of this relief. Accordingly, we transfer the matter of Guttlein's conduct in this case to this Court's Grievance Panel for its determination of whether the matter should be referred to the Court's Committee on Admissions and Grievances.

Referral Order II also noted that in *Vargas-Gonzalez v. United States Department of Justice*, 05-3562, the Court granted a motion for reinstatement filed by Guttlein on behalf of his client despite the untimeliness of the request. The February 13, 2008 order states:

> [T]he records of this Court indicate that the tardiness of the appellant's counsel, Jorge Guttlein, in the present appeal was not an isolated incident, as he has failed to meet deadlines in a number of other cases in which he is counsel of record. The issue of whether that history of delay constitutes sanctionable misconduct is transferred to this Court's Grievance Panel for such action as it deems advisable under the circumstances.

---

[1] According to Referral Order I , the 32 cases that had been dismissed were docketed under 03-4107; 03-4394; 03-40429; 03-40942; 04-0913; 04-4127; 04-4829; 04-4957; 04-5128; 04-5726; 04-5861; 05-0245; 05-0978; 05-1243; 05-1515; 05-2072; 05-2467; 05-3519; 05-3398; 05-5218; 05-5280; 05-5791; 05-6073; 05-6307; 05-6642; 05-6718; 06-0990; 06-2001; 06-3363; 06-4989; 06-5791; and 07-0464.

[2] Those three cases were docketed under 05-4957; 06-1247; and 06-2109.

## III.  This Disciplinary Proceeding

On March 17, 2008, the Committee issued an Order to Show Cause regarding Guttlein's conduct as set forth in Referral Orders. A copy of the Referral Orders and the Committee's rules were attached to the Order to Show Cause. On May 12, 2008, Guttlein submitted a declaration in response to the Order to Show Cause.

A hearing in this matter was held on September 18, 2008 before a sub-committee consisting of Eileen M. Blackwood, Terrence M. Connors, and Paul C. Curnin. Guttlein was represented at the hearing by Richard Maltz.

Mr. Maltz requested and received permission to submit additional information and character evidence after the hearing on Guttlein's behalf. The Committee also asked Guttlein to submit additional information about his prior disciplinary history and any currently pending cases after the hearing.

After the hearing, Guttlein submitted the information requested by the Committee as well as several character letters from both federal and state judges and other lawyers. A brief summary of a few of the character letters, which are generally representative, follows.

The Honorable Denny Chin, a United States District Court Judge for the Southern District of New York, who has known Guttlein since they served together as Assistant United States Attorneys, believes that Guttlein "is a capable, responsible attorney of high moral character and integrity" who represents his clients "diligently and capably." Judge Chin is confident that any misconduct in which Guttlein has engaged is "uncharacteristic of the type of lawyer he actually is and has been over the years."

The Honorable Edward J. McLaughlin, a New York Supreme Court Justice before whom Guttlein has appeared often, wrote that Guttlein "is an effective advocate who is much sought after for his legal skills, his familiarity with federal and state criminal and immigration law and his ability to converse with clients in their native Spanish language." Justice McLaughlin is "confident that [Guttlein's prior] troubles will not interfere with his ability to comply with the Circuit's rules in the future."

The Honorable James A. Yates, a New York Supreme Court Justice, wrote that Guttlein has appeared before him on various matters for 16 years. Justice Yates noted Guttlein's "very active practice; perhaps too active a practice," and indicated that there have been several instances in which Guttlein has requested adjournments "frequently to [Justice Yates'] dismay." Nevertheless, Justice Yates indicated that Guttlein's reasons for requesting adjournments have been because of legitimate competing obligations, not "simple neglect." When Guttlein has appeared before Justice Yates, he was "prepared to discuss the case and [had] a current knowledge of his client's legal position" and "was a zealous and professional advocate, knowledgeable in the law and concerned for his client's welfare." Justice Yates wrote:

3

In sum, while I do believe that Mr. Guttlein may have over-committed himself in cases to a point which calls into question his ability to realistically appraise the time available or necessary to handle all his obligations, I don't believe that it was for lack of competence or caring, he is not a neglectful or callous person, in my opinion, he just has too many "balls in the air." I hope the Committee can address this problem without depriving the defense bar of a skilled and zealous advocate.

Thomas E. Moseley, an immigration lawyer, has known Guttlein since he supervised Guttlein as the Chief of the Immigration Unit in the United States Attorney's Office for the Southern District of New York. Moseley is "firmly convinced" that Guttlein "is a highly capable attorney and a practitioner of both utmost integrity and good moral character" and "is committed to providing effective representation to his clients."

Telesforo Del Valle, Jr., a criminal defense lawyer, has known Guttlein for over thirty years and has "witness[ed] Mr. Guttlein's legal work on numerous occasions." According to Del Valle, Guttlein is "a hard working and zealous advocate, with a firm command of the applicable law, and with a sincere and honest concern for the welfare of his clients." Del Valle believes that the conduct which is the subject of the Referral Orders is "truly uncharacteristic."[3]

## IV. Factual Background

Guttlein has been admitted to practice law in New York since 1980, and he started his career in the Antitrust Division of the Department of Justice. In 1982, he began working as an Assistant United States Attorney in the Southern District of New York, where he remained until 1987. In 1985 and 1986, Guttlein was a special assistant for the immigration service. During his time as an Assistant United States Attorney, Guttlein received Justice Department achievement awards as well as commendations from the immigration service.

Guttlein left the Government and opened his own firm, Aranda & Guttlein, with Andres Aranda in 1987. Initially, 10-15% of the firm's practice was immigration cases. In 2000, that percentage began increasing and at the present time, 50-60% of his cases are immigration matters. Guttlein believes his firm is one of the few in New York City that do both criminal and immigration work and he currently focuses much of his practice on immigration proceedings after a criminal conviction.

---

[3] Guttlein also submitted character letters from the Honorable William A. Wetzel, a New York Supreme Court Justice; the Honorable Lawrence M. McKenna, a United States District Court Judge for the Southern District of New York; Verena C. Powell, a private practitioner; and Theodore S. Green, a private practitioner.

Guttlein estimated that he currently has close to 1,000 pending cases. Many of those cases are inactive because, for example, he is waiting for a ruling from an administrative agency or a court.

Guttlein's only prior discipline is a private letter of admonition he received in 1988 for failing to timely file a complaint. Guttlein has been the subject of additional disciplinary complaints that have been dismissed.

According to Mr. Maltz, Guttlein's prior firm, Aranda & Guttlein, has also been the subject of disciplinary complaints. In particular, Guttlein's former partner, Andres Aranda, was suspended by New York State disciplinary authorities for conduct that did not implicate Guttlein. In light of the confidentiality requirements of New York Judiciary Law § 90(10),[4] as well as Mr. Maltz's confidentiality obligations to Aranda,[5] Mr. Maltz and Guttlein were hesitant to disclose to the Committee details of prior disciplinary complaints against Aranda & Guttlein because such complaints would could also implicate Aranda. In light of these concerns, the Committee accepted Mr. Maltz's representation that in the years in which he has been representing Guttlein and his former firm, Mr. Maltz knows of no discipline that has been issued to Mr. Guttlein individually or as a member of his former firm.[6]

## V.    Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a

---

[4]  New York Judiciary Law § 90(10) states, in relevant part: "Any statute or rule to the contrary notwithstanding, all papers, records and documents upon the application or examination of any person for admission as an attorney and counsellor at law and upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential."

[5]  Mr. Maltz represented Mr. Aranda.

[6]  Mr. Maltz worked at the Departmental Disciplinary Committee for the New York Appellate Division First Department from 1989 through 2000 as a staff attorney, Deputy Chief Counsel, and First Deputy Chief Counsel, and the Committee has no reason to question his representation.

Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," the Committee and the Court may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004); *In re Rabinowitz*, 596 N.Y.S.2d 398, 402 (App. Div. 1993); *United States v. Song*, 902 F.2d 609 (7th Cir. 1990); *In re Kraft*, 543 N.Y.S.2d 449 (App. Div. 1989); *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(a)(3). In addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the Committee should consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. ABA Standards § 3.0. The Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## VI.    The Alleged Misconduct

### A.    Briefing in *Porras*

Guttlein represented the petitioner, Yulieht Redon Porras, in *Porras v. INS*, 06-3067. The BIA had denied Porras's appeal because Guttlein failed to file a brief on her behalf. In the brief filed with the Court in support of Porras's petition for review, however, Guttlein failed to address the default before the BIA and instead argued the merits of Porras's request for asylum.

According to Guttlein, he began representing Porras more than ten years ago, when she was arrested for attempting to purchase a green card. After immigration proceedings began, Guttlein pursued multiple avenues of potential relief to keep Porras in the country. One of those avenues – but not the primary avenue – was asylum.

Guttlein testified that Porras panicked at her asylum hearing and was unable to testify effectively. The immigration judge denied her request for asylum. Guttlein appealed that determination to the BIA at Porras's insistence. Guttlein explained that he considered the appeal to the BIA to be a "protective notice of appeal" because he hoped that one of the more promising avenues of potential relief he was pursuing would be successful while the appeal was pending. He did not file a brief with the BIA because he "thought it would be difficult to make any type of cogent argument." He could not simply withdraw the BIA appeal because Porras would, at that point, be potentially subject to immediate deportation.

After the BIA denied Porras's appeal for failure to file a brief, Guttlein claims he did not want to file a petition for review but Porras's family pressed him to do so, "even though they were informed that the appeal was extremely weak." Despite claiming that he did not file a brief with the BIA because he had nothing to argue, he filed a brief with the Court. He testified that doing so was "a massive error" because he "really had no argument in the Second Circuit," and he admitted that the brief was frivolous. He also testified that Porras and her family knew throughout the proceedings that there was "no basis" for her asylum appeal and that its main purpose was to buy time to pursue alternative forms of relief.

Guttlein explained that he "improperly allowed the family of the client to influence [his] decision to continue to prosecute their case." He "do[es] not disagree that [his] brief did not properly address an important issue," and he "understand[s] that [he] should have not filed an appeal with the BIA or submitted a proper brief, regardless of whether the case was weak." He "further understand[s] that if an appeal has no merit [he] should not file an appeal regardless if a client insists." He claims that if a similar situation happens again, he would decline to pursue the appeal.

With respect to Guttlein's failure to address in the brief he filed with the court the reason for the BIA decision under review – his failure to file a brief in support of the appeal – Guttlein testified that the associate he assigned to draft the brief "obviously didn't address the key issue of what arguments can [he] raise when he didn't raise anything in front of the BIA." Guttlein admitted that he failed to "carefully review" the brief before it was filed. He attributes that

7

failure to the personal problems he was going through at the time, which are discussed below. That associate no longer works for Guttlein.

## B.    Untimely Motion to Reinstate in *Vargas-Gonzalez*

In *Vargas-Gonzalez v. United States Department of Justice*, 05-3562, the case referenced in Referral Order II, Guttlein filed an untimely motion for reinstatement of his client's petition for review. According to Guttlein, at the time of the filing of the petition for review in *Vargas-Gonzalez*, another case, *Blake v. Carbone*, was *sub judice* before the Court and would determine the outcome in *Vargas-Gonzalez*. Therefore, Guttlein entered into a stipulation with the Government by which his client's petition for review would be dismissed without prejudice pending a decision in *Blake*. The stipulation required Guttlein to notify the Clerk of Court that his client wished to reinstate the petition for review within 60 days after the Court's decision in *Blake*.

The Court issued an opinion in *Blake* on June 1, 2007. *Blake v. Carbone*, 489 F.3d 88 (2d Cir. 2007). Guttlein did not move to reinstate the petition for review in *Vargas-Gonzalez* until November 8, 2007. The Court denied the motion because Guttlein filed it more than 60 days after the *Blake* decision. Guttlein filed a motion for reconsideration, which the Court granted. At the same time he was moving to reinstate the petition for review, Guttlein filed a motion with the BIA to re-argue the case based on the decision in *Blake*, which was granted. Ultimately, the petition for review was dismissed by stipulation in light of the BIA's decision to grant the motion to re-argue.

Guttlein claims that he failed to timely move for reinstatement because he "did not become immediately aware of the *Blake* decision." Other than reading the Law Journal each day, Guttlein was unable to recall any steps he took to monitor *Blake*.

## C.    Failure to Comply with Scheduling Orders

Guttlein has failed to comply with the scheduling order in numerous cases since September 2005. Referral Order I lists 32 petitions for review that were dismissed because Guttlein failed to comply with the scheduling orders and three additional cases in which the petitions were dismissed for failure to file form C/A. Guttlein does not dispute that he defaulted in these cases.[7] Instead, he offers several reasons for his failure to perfect these appeals.

Guttlein claims that the "most common reason" he failed to proceed with these cases was that his "clients were not interested in proceeding and lost touch with [his] office." He notes that it "is not uncommon in [his] type of practice, and the type of aliens [he] represents, for the clients to abandon their cases." A large percentage of his clients are aliens accused of criminal conduct with whom it is frequently difficult to stay in contact.

---

[7]    Guttlein correctly notes that one of the cases appears to have been included mistakenly. He was not the attorney of record in the case docketed under 05-5791.

8

Guttlein also claims that he did not proceed with some of the cases because they lacked merit. For example, several of the cases involved appeals of denials of discretionary relief, which were filed before the REAL ID Act of 2005 limited reviewed of discretionary denials by Courts of Appeal. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Guttlein indicated that in such cases, his client agreed not to proceed with the petition for review.

Guttlein further claims a number of non-case specific issues affected his ability to comply with the scheduling orders. He notes that systemic changes in the handling of immigration appeals led to a rapid increase in his case load of Second Circuit petitions for review and his "office was not properly equipped to handle this new volume of cases." Guttlein was unable to hire sufficient staff to assist with this increase in Second Circuit cases because his law firm was not producing enough income. "This resulted in the short cut of abandoning cases instead of making a proper application and, in some instances, the late filing of briefs."

Additionally, Aranda, Guttlein's partner, was suspended from the practice of law in 2006, and Guttlein had to deal with Aranda's case load, both by handling some matters himself and by paying other lawyers to handle other matters.

Guttlein also faced a number of personal issues at this time. He went through an "acrimonious separation and divorce" beginning sometime in 2004. In October 2004, Guttlein's mother died after a long illness. In 2005 or 2006, Guttlein filed for bankruptcy, in part because of his divorce and in part because of financial problems with his law practice. Guttlein testified that his divorce and bankruptcy were not resolved until late spring or early summer 2007.

According to Guttlein, each time a petition for review was dismissed because of failure to comply with the scheduling order, he notified his clients. None of his clients in those cases filed a complaint with any disciplinary authority. He continues to represent more than half of those petitioners.

Guttlein believes, and the Committee has no evidence to the contrary, that none of his clients were prejudiced in these cases. He noted that many of their cases involved discretionary decisions by the BIA which, after the REAL ID Act, are not reviewable by Circuit Courts. He continues to pursue other forms of relief for many of these clients, and none has raised claims of ineffective assistance against him.

Even after the issues noted above were resolved, however, it appears that Guttlein has had some more recent issues with respect to scheduling orders. In *Alejo v. U.S. Department of Justice*, 07-2074, Guttlein timely sought an extension of the deadline to file the petitioner's brief. The Court granted the request and indicated that no further extensions would be granted. Nonetheless, on October 23, 2007, three days before his brief was due, Guttlein sought an additional extension. The Court denied the request but granted a brief grace period to file the brief. Guttlein filed his brief within that grace period. Guttlein indicated to the Committee that the same associate who was responsible for the brief in *Porras*, and who is no longer in Guttlein's employ, was responsible for the brief in *Alejo*.

9

In *Segura v. U.S. Department of Justice*, 08-1485, the initial scheduling order required Guttlein to file the petitioner's brief on June 9, 2008, which Guttlein did not do. Guttlein indicated that the scheduling order was premature because the Court had not yet issued a pre-argument notice. It appears that Guttlein is correct. A subsequent order of the Court vacating the initial scheduling order indicated that it was "entered in error." Nonetheless, the Committee finds it somewhat troubling that Guttlein simply ignored the scheduling order instead of confirming with the Court that it was entered prematurely.

## VIII. Recommendation

The Committee finds that there is clear and convincing evidence that Guttlein committed misconduct by (1) submitting a brief in *Porras* that he knew to be meritless; (2) failing to adequately monitor the status of *Blake*; and (3) failing to comply with scheduling orders in numerous cases. This conduct is "unbecoming a member of the bar," Fed. R. App. P. 46(c), in violation of Rule 38 of the Federal Rules of Appellate Procedure, and in violation of D.R. 6-101(A)(3). This misconduct warrants sanction.

There are two aggravating factors. First, Guttlein has engaged in a pattern of misconduct. *See* ABA Standards § 9.22(c) (pattern of misconduct can be aggravating factor). For an approximately three to four year period, Guttlein repeatedly failed to comply with the Court's scheduling orders. Second, Guttlein is an experienced practitioner who, even by his own account, should have recognized and addressed his problems sooner than he did. *See* ABA Standards § 9.22(i) (substantial experience in the practice of law can be aggravating factor).[8]

There are also significant mitigating factors. Guttlein's misconduct was not the result of a dishonest or selfish motive. *See* ABA Standards § 9.33(b) (absence of a dishonest or selfish motive can be a mitigating factor). In fact, the misconduct in *Porras* appears to be the result of Guttlein's misguided attempt to delay his client's deportation while he was pursuing other forms of relief. Additionally, Guttlein was generally forthcoming and cooperative with the Committee's investigation. *See* ABA Standards § 9.33(e) (cooperative attitude toward disciplinary proceedings can be a mitigating factor). Moreover, as evidenced by the impressive array of character letters he submitted, Guttlein appears to have a good reputation and a strong character. *See* ABA Standards § 9.33(g) (character or reputation can be a mitigating factor). Finally, Guttlein generally accepted responsibility for his misconduct, and the Committee found Guttlein's expressions of remorse to be credible. *See* ABA Standards § 9.33(l) (remorse can be a mitigating factor).

---

[8] While Guttlein has a prior disciplinary offense for related conduct (missing a deadline), the Committee does not consider it to be an aggravating factor because that misconduct occurred twenty years ago. *Cf.* ABA Standards § 9.33(m) (remoteness of prior offenses can be a mitigating factor)

10

In light of these factors, the Committee recommends that Guttlein receive a public reprimand from the Court. (A draft form of reprimand is attached.) In making this recommendation, the Committee was influenced by several factors.

First, it appears that the majority of Guttlein's misconduct occurred within a three to four year period in which Guttlein was experiencing several serious professional and personal issues. Nonetheless, the Committee also recognizes that some of the misconduct appears to have occurred after many of the clouds had passed.

Second, it is not clear that Guttlein's misconduct prejudiced his clients. While filing a frivolous appeal with the BIA and then with the Court in the *Porras* matter was improper, it appears to have been part of a strategy to buy time to pursue other forms of relief – to the client's potential advantage, not disadvantage. In *Vargas-Gonzalez*, Guttlein's client was able to re-open his case before the BIA without any prejudice resulting from Guttlein's failure to monitor the *Blake* case. Several of the numerous petitions for review that were dismissed as result of Guttlein's failure to comply with the scheduling order appear to have been meritless after passage of the REAL ID Act. At the same time, without reviewing the merits of each case, the Committee cannot conclude that none of the clients whose petitions were dismissed as a result of Guttlein's failure to comply with the scheduling orders suffered any prejudice. Moreover, the level of prejudice to clients does not excuse Guttlein's disregard of court orders and the resulting burden on the Court and its staff.

Third, Guttlein has taken several steps in order to prevent the same misconduct from occurring again. He has worked with Mr. Maltz to improve his case management. Guttlein testified that he now has a computer system that helps him keep track of his cases and upcoming deadlines. All of his cases and their upcoming dates are on the system. Guttlein has also hired staff to assist him. He now has three associates and three full-time paralegals. One of those associates focuses primarily on immigration appeals. Guttlein meets with his staff every morning to go over the case calendars and what has to be done. Once a week, he and his staff meet to discuss the new cases in which he has been retained that week and to discuss what needs to be done within the next month.

Finally, Guttlein now appears to have in place a better support system to assist him should problems like those he previously faced arise again. Thomas E. Moseley, an experienced immigration practitioner, has agreed to serve as someone Guttlein can turn to for advice and mentoring, as has Telesforo Del Valle, Jr. Additionally, Guttlein testified that he now has achieved stability in his personal life.

The Committee also notes that Guttlein has had some issues in more recent cases, such as in the *Alejo* matter discussed above. Therefore, the Committee recommends that Guttlein be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; or (2) an application is made for permission to make a late filing only after the due date has

11

passed. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Guttlein and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.