In re Vialet

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7ᵗʰ day of February, two thousand twelve.

PRESENT:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,

*Circuit Judges.*



09-90132-am

In re Theodore Anthony Vialet,

Attorney.

**ORDER OF
GRIEVANCE PANEL**

For Theodore Anthony Vialet:       Theodore Anthony Vialet, Esq.,
                                    New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and Theodore Anthony Vialet is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report.

## I. Summary of Proceedings

By order filed in February 2010, this Court referred Vialet to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Vialet had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in October 2010. Vialet proceeded *pro se* before the Committee. Presiding over the hearing were Committee members Terrence M. Connors and Kimberly A. Knox, and Committee chair Mary Jo White. In May 2011, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendation. Thereafter, the Court provided Vialet with a copy of the Committee's report, and Vialet responded.

In its report, the Committee concluded that there was clear and convincing evidence that Vialet had engaged in misconduct warranting the imposition of discipline. Report at 11. Specifically, the Committee found that Vialet had: (1) failed to comply with the Court's scheduling orders in 31 cases, causing the dismissal of 11 of those cases, and continued to do so even after receiving notice of the Court's referral order, *id.* at 5-7, 10; (2) improperly filed a case in this Court, instead of the proper venue, *id.* at 5, 6; and (3) filed deficient briefs in several cases, in violation of Federal Rule of Appellate Procedure 28, and continued to do so even after

receiving notice of the Court's referral order, *id.* at 7-8. After considering various aggravating and mitigating factors, *id.* at 10-11, the Committee recommended that Vialet be publicly reprimanded and required to complete certain continuing legal education ("CLE") classes, *id.* at 11-12.

With regard to mitigation, the Committee noted, *inter alia*, Vialet's assertion that he had been able to reopen, before the Board of Immigration Appeals, several cases that had been dismissed by this Court. *Id.* at 6. However, the Committee cited only two examples of cases that had been reopened, *Diallo v. DHS*, 08-0416-ag, and *Diallo v. Holder*, 08-4271-ag. *Id.*

In his June 2011 response to the Committee's report, Vialet acknowledged his misconduct and agreed with the Committee's findings and recommendations, with one exception – he argued that the Committee's list of cases he had been able to reopen after their dismissal by this Court was incomplete. Aside from "the two mentioned by the Committee," an apparent reference to the two *Diallo* cases cited on page 6 of the Committee's report, he stated that he also had been able to reopen *Sy v. Holder*, No. 09-0779-ag, and unspecified "additional cases" for which he could not locate the docket numbers "at the present time."

**II. Mitigation**

We construe Vialet's argument that the Committee's list of reopened cases is incomplete as a request that this Court consider mitigating information in addition to that specified by the

3

Committee. However, we find that the Committee did, in fact, credit Vialet's reopening of cases beyond the two cases cited in the report – despite Vialet's own failure to identify such cases aside from *Sy*, *Diallo*, and *Diallo* – and accorded proper weight to that mitigating information.

Vialet has been on notice of the list of defaulted cases since March 2010, when he received a copy of the Court's referral order. *See* Vialet letter dated March 10, 2010 (Tab D of Record). However, he never identified more than two or three reopened cases by name. In his May 2010 written response to the Committee's order to show cause why he should not be disciplined, he noted that there had been "some instances" where he had moved to reopen before the agency after dismissal of the case by this Court, but provided only one example, *Sy*. *See* Vialet letter dated May 13, 2010 (Tab G of Record) at 8. In a September 2010 letter to the Committee, he referred to another case that had been reopened by the agency, *Diallo v. Holder*, No. 08-4271-ag, *see* Vialet letter dated Sept. 24, 2010 (Tab I of Record) at 1, which was one of the reopened cases subsequently noted in the Committee's report, *see* Report at 6. During the October 2010 hearing, he testified that two unspecified cases definitely had been reopened, another unspecified case may have been reopened, and other unspecified cases had motions to reopen pending. Transcript (Tab J of Record) at 45. One case that was apparently reopened by the agency was later identified as "*Jello*," which may have been a

4

mistranscription of "*Diallo*." *Id.* at 46 ("For example, I think I filed on a case was reopened [sic], Jello..."). At a later point, Vialet stated his belief that "three other cases" had been reopened by the Court itself, but did not identify those cases. *Id.* at 50. Even as late as June 2011, when he filed his response to the Committee's report – fifteen months after receiving notice of the Court's referral order and of the need to provide mitigating information – Vialet still failed to provide names of additional reopened cases.

We find that, despite the conclusory nature of Vialet's assertions regarding "additional" reopened cases, the Committee accepted those assertions. In its report, the Committee noted that Vialet "did not offer specific responses to each of the cases listed in the [Court's] Referral Order but rather chose to address the issue more generally," and then stated the following:

> Mr. Vialet had some additional observations about certain cases and categories of cases. For example, he noted that in some of the cases that were dismissed by the Court, he was able to reopen the matter before the Board of Immigration Appeals and therefore sought to protect his clients' interests by pursuing alternative relief. *See, e.g., Diallo v. DHS*, 08-0416-ag; *Diallo v. Holder*, 08-4271[-ag].

Report at 6. The reference to "some of the cases that were dismissed by the Court," and the citation signal "*See, e.g.,*" clearly convey the Committee's understanding that Vialet's mitigation argument concerned more than two cases. Moreover, in its later findings concerning mitigating factors, the Committee stated

5

that Vialet had "instituted various corrective measures," *id.* at 11, which we read as including both his attempted and successful reopening of cases.

Under these circumstances, there was no need for the Committee either to specifically cite to *Sy* or to identify other reopened cases by name. Vialet himself failed to identify by name any cases other than *Sy*, *Diallo*, and *Diallo*, despite having ample opportunity to do so, and, in any event, the inclusion of additional case names in the Committee's description of mitigating factors would not alter the result.

## III. Disposition

Upon due consideration of the Committee's report, the underlying record, and Vialet's submissions, it is hereby ORDERED that Vialet is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report. It is further ORDERED that Vialet:

(a) complete, within one year of the filing date of this order, at least six hours of live in-class CLE instruction in appellate-level advocacy and/or appellate brief-writing, focusing on immigration law to the extent possible, and at least six hours of live in-class CLE instruction in law office/practice management. The required CLE classes must be taken in addition to the regular CLE requirements applicable to all members of the New York bar, and taught by CLE providers accredited by that bar. Vialet must submit information about proposed CLE courses directly to the Committee's secretary, who will inform him whether the Committee agrees that the proposed courses satisfy his obligation.

(b) certify his completion of the above-described CLE classes by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the one-year period. The Committee may modify the CLE

6

requirements and deadlines, either on motion or *sua sponte*.

The text of this panel's February 2010 order and the Committee's report are appended to, and deemed part of, the present order for purposes of disclosure of this order by Vialet and the Clerk of Court. The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Vialet, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[1]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: Michael Zachary
Counsel to the Grievance Panel

---

[1] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

7

# APPENDIX 1

## Text of February 2010 Order

For the reasons that follow, Theodore Vialet is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46.2. We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Vialet was referred to this panel as a result of his failure to abide by this Court's scheduling orders in numerous cases. A review of the 34 cases Vialet has filed in this Court since January 1, 2008, reveals that, in 31 cases, he has failed to comply with scheduling orders, leading in many cases to dismissal, and in other cases to his filing of the opening brief late or only after the issuance of an order to show cause ("OSC") why the petition for review should not be dismissed. *See Barry v. DHS*, 08-0137-ag (OSC issued, petition dismissed for failure to file brief, petition later reinstated); *Baro v. DHS*, 08-0171-ag (brief filed only after OSC issued); *Bah v. DHS*, 08-0216-ag (OSC issued, extension of time granted, second OSC issued, petition dismissed, and reinstatement not sought); *Dumaneh v. DHS*, 08-0404-ag (form C/A filed late, OSC issued, petition dismissed, reinstatement not sought); *Diallo v. DHS*, 08-0416-ag (OSC issued, petition subsequently withdrawn); *Diallo v. DHS*, 08-0556-ag (form C/A filed late, brief filed only after OSC issued); *Sy v. DHS*, 08-0664-ag (brief filed only after OSC issued); *Diallo v. DHS*, 08-1156-ag (OSC issued, extension granted, motion to file late brief denied since not accompanied by brief, petition dismissed, reinstatement not sought); *Ndiaye v. Mukasey*, 08-2028-ag (brief accepted for late filing); *Diallo v. Mukasey*, 08-2279-ag (brief accepted for late filing); *Bah v. Mukasey*, 08-2308-ag (OSC issued, petition dismissed, reinstatement not sought); *Diallo v. Mukasey*, 08-3528-ag (form C/A filed late, brief accepted for late filing); *Diallo v. Mukasey*, 08-3556-ag (form C/A filed late, OSC issued, petition dismissed, reinstatement not sought); *Diallo v. Mukasey*, 08-3747-ag (form C/A filed late); *Sudjita v. Mukasey*, 08-4027-ag (brief accepted for late filing); *Turay v. Mukasey*, 08-4127-ag (OSC issued, petition dismissed, reinstatement not sought); *Ba v. Holder*, 08-4242-ag (OSC issued, extension granted, no brief filed, petition dismissed, reinstatement not sought); *Barry v. Mukasey*, 08-4257-ag (motion for extension of time filed ten days after time to file brief expired, Court granted further extension but noted Vialet's "indifference to the scheduling orders of this Court");

*Diallo v. Mukasey*, 08-4271-ag (form C/A filed late, OSC issued, petition dismissed, reinstatement granted, petition again dismissed for failure to timely file brief after reinstatement); *Barry v. Mukasey*, 08-4316-ag (form C/A filed late, extension granted after first default on briefing schedule, no response to OSC, petition dismissed after second default, reinstatement not sought); *Toar v. Mukasey*, 08-4418-ag (brief filed only after OSC issued); *Sow v. Mukasey*, 08-4609-ag (form C/A filed late, brief filed only after OSC issued); *Kone v. Mukasey*, 08-4764-ag (OSC issued, petition dismissed, reinstatement not sought); *Bah v. Holder*, 08-4770-ag (brief accepted for late filing); *Jalloh v. Mukasey*, 08-4929-ag (brief accepted for late filing); *Ba v. Mukasey*, 08-5197-ag(L); 08-5206-ag(Con) (brief filed only after OSC issued); *Fall v. Mukasey*, 08-5399-ag (OSC issued, petition dismissed, petition reinstated, brief accepted for late filing); *Kourouma v. Mukasey*, 08-5643-ag (brief filed only after OSC issued); and *Sy v. Holder*, 09-0779-ag (OSC issued, Court provided brief grace period for filing of brief rather than extension because "[c]ounsel's behavior reflects a disrespect for the court in the way he has simply ignored our scheduling orders," no brief filed during grace period, petition dismissed, reinstatement not sought); *Tjandra v. Holder*, 09-2985-ag (brief filed late). In addition, in *Tounkara v. Mukasey*, 08-2929-ag, Vialet filed the petition for review in this Court when the proper venue was the Fifth Circuit, requiring this Court to expend resources to transfer the case.[1]

We are aware that, in a number of these cases, Vialet explained that his late filing was caused by a severe respiratory illness as well as the demands of preparing for oral argument on a difficult issue involving asylum claims based on female genital mutilation. *See, e.g.*, affidavit filed 8/25/2008 in No. 08-1156-ag. In more recent cases, he cited a "tremendous backlog of work." *See, e.g.*, affidavit filed 3/31/2009 in No. 08-4316-ag. Nevertheless, given the duration of Vialet's persistent failure to comply with scheduling orders, the number of cases involved, and the fact that he apparently continued to take on new cases despite backlog concerns, those reasons are subject to doubt. Additionally, it is not clear why, based on his alleged illness and workload, Vialet did not seek – prior to the defaulted deadlines – a stay of the relevant cases, further extensions of

---

[1] Aside from *Bahs v. DHS*, 07-5301-ag, the Court has not reviewed, for purposes of this order, cases filed before 2008, and the cases and events noted in the text are not intended as a complete overview of all cases and events that may be relevant to these proceedings.

time, or substitution of counsel.

In addition to the above-noted issues, panels of this Court also have remarked upon poor briefing by Vialet on several occasions. In *Bah v. DHS*, 07-5301-ag, the merits panel found that the brief prepared by Vialet "fail[ed] to address with any degree of specificity the findings supporting the agency's adverse credibility determination and ... fail[ed] to provide any supporting citations to any of this Court's decisions, [such that the] brief does not comply with Fed. R. App. P. 28(a)(9)(A)." No. 07-5301-ag, order filed 11/7/2008. The panel found this omission "fatal to the portion of [the] petition for review purporting to challenge the agency's adverse credibility finding" and warned Vialet that "future briefing of this quality may result in discipline." *Id.*

In *Diallo v. DHS*, 08-0556-ag, the merits panel stated that "the brief submitted by ... Vialet[] is cursory at best and comes dangerously close to waiving any challenge to the agency's adverse credibility determination," adding that "[f]urther briefing of this quality may result in discipline." No. 08-0556-ag, order filed 3/31/2009. In *Barry v. Mukasey*, 08-4257-ag, the merits panel stated that: (1) the brief "fails to cite to any caselaw to support any of [the] arguments challenging the [immigration judge]'s adverse credibility determination, suggesting that it fails to comply with ... Fed. R. App. P. 28(a)(9)(A)"; (2) the brief challenged only one of the seven findings that the immigration judge made to support his adverse credibility determination; and (3) it was "troubled by the poor quality of the brief submitted by ... Vialet." No. 08-4257-ag, order filed 4/8/2009. The panel noted that "[t]his is not the first time that Vialet has submitted a brief that we have deemed insufficient" and stated that "Vialet is again warned that future briefing of this quality may result in discipline." *Id.*

Finally, in addition to the cases in which this Court has expressly warned Vialet with respect to deficient briefing, we note that: (1) in *Sy v. DHS*, 08-0664-ag, the merits panel observed that the brief failed to "address certain of the ... credibility findings" and that, "[a]rguably, these [unchallenged] findings were alone sufficient to support the agency's credibility determination," *see* order filed 12/31/2008; (2) in *Diallo v. Mukasey*, 08-3528-ag, a motions panel of this Court granted the Government's motion to summarily deny the petition for review because Vialet's brief failed to address the agency's adverse credibility determination, which was in itself a dispositive issue, *see* order filed 4/15/2009; and (3) in *Sow v. Mukasey*, 08-4609-ag, the merits panel noted that Vialet's brief failed to

10

challenge five separate bases for the agency's adverse credibility finding, and opined that, "[a]rguably, the[se] [unchallenged] findings ... alone constitute substantial evidence for the agency's credibility determination," *see* order filed 6/12/2009.

Upon due consideration of the matters described above, it is hereby ORDERED that Theodore Vialet is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46.2, and the Rules of the Committee on Admissions and Grievances. The Committee is authorized to share information, and/or hold joint proceedings, with other disciplinary committees, as long as confidentiality is maintained.

[Remainder of order redacted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to the Grievance Panel

**REPORT & RECOMMENDATION**
In Re: Theodore Anthony Vialet, #09-90132-am

I. **Introduction**

By Order dated February 25, 2010 ("Referral Order"), the United States Court of Appeals for the Second Circuit (the "Court") referred Theodore Anthony Vialet to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to discipline or other corrective measures.

Mr. Vialet is a solo practitioner specializing in immigration law, with a heavy concentration on asylum and removal cases. He was admitted to practice before the Court on December 30, 2009, after what he characterized as two previous attempts to be admitted. The Court's Referral Order raises two areas of concern: (1) failure to abide by the Court's scheduling orders in 31 of 34 cases filed between January 1, 2008, and the date of the Referral Order; and (2) poor briefing in six specific cases. Additionally, while not raised in the Referral Order, the Committee learned that Mr. Vialet was filing briefs and records with the Court and participated in at least one oral argument prior to his admission to practice before the Court.

The Committee concludes that Mr. Vialet has committed misconduct and that his misconduct warrants a sanction. The Committee recommends that Mr. Vialet be publicly

reprimanded and be required to attend Continuing Legal Education ("CLE") courses in addition to the CLE hours required for all attorneys admitted in New York State.

The following constitutes the Committee's Report and Recommendation to impose discipline on Mr. Vialet.

## II.     The Referral Order and this Disciplinary Proceeding

On March 1, 2010, this Committee issued a Notice of Referral and Proceeding requiring Mr. Vialet to show cause why it should not recommend disciplinary and/or other corrective action with respect to the conduct alleged in the Court's Referral Order. The Referral Order addressed 34 separate matters pending before the Court in 2008-2010 in which Mr. Vialet was listed as counsel of record. By letter of March 10, 2010, Mr. Vialet timely requested a sixty-day extension of his time to respond, and he was granted a forty-five-day extension by this Committee. On May 13, 2010, Mr. Vialet timely submitted a response with exhibits. Thereafter, Mr. Vialet submitted two supplemental responses, one on May 21, 2010, and another on September 24, 2010. A hearing was held on October 8, 2010, before a subcommittee consisting of Terrence M. Connors and Kimberly A. Knox. Mary Jo White participated in committee deliberations via telephone conference. Mr. Vialet appeared *pro se* and testified on his own behalf.

At the conclusion of the hearing, Mr. Vialet was provided 30 days to submit letters of reference on his behalf. He submitted one letter from Manuel D. Gomez, Esq. Mr. Gomez is a colleague of Mr. Vialet's, and he writes that Mr. Vialet made court appearances on behalf of Mr. Gomez in Bankruptcy and Civil Court. He "valued" Mr. Vialet's work as well as the fact that he treated Mr. Gomez's clients well. Mr. Gomez often consulted Mr. Vialet for advice on immigration law matters. Mr. Gomez also notes that Mr. Vialet works long hours, and he states that he admires Mr. Vialet's work as a lawyer and highly recommends him.

## III.     Factual Background

The following facts are taken from Court records, Mr. Vialet's written submissions with documentation, and the testimony presented at the hearing.

Mr. Vialet is a solo practitioner in New York City. He was admitted to practice law in New York State by the Appellate Division, Second Department in 1996. In addition to his Second Circuit admission noted above, he also is admitted in the United States District Court for the Eastern and Southern Districts of New York. He is 53 years old.

2

Mr. Vialet graduated from Fordham University and earned his law degree from New York Law School.

Mr. Vialet has been a solo practitioner for most of his career. At times, he has had one or two non-lawyer employees assisting him. His immigration work is comprised mainly of asylum applications and largely involves West African immigrants.

According to Mr. Vialet's testimony, following a successful appeal involving the issue of female genital mutilation (*see Bah v. Mukasey*, 529 F.3d 99 (2d Cir. 2008)) as well as his successes before the Board of Immigration Appeals, Mr. Vialet's caseload increased, and he received an influx of clients seeking his services with respect to appeals. By his own admission, he was overworked and unable to handle his caseload, especially because, as a solo practitioner, he had no assistance. Since the Court issued its Referral Order, he has limited the number of Second Circuit cases he accepts. Mr. Vialet testified that at the time of the hearing, he had five cases pending before the Court. As of February 1, 2011, Mr. Vialet had five cases pending before the Court, four of which were filed after he received notice of the Referral Order.

## IV. Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* Federal Rule of Appellate Procedure ("F.R.A.P.") 46(c) ("[a] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,'

3

as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645, 105 S. Ct 2874, 2881 (1985).

Under F.R.A.P. 28(a)(9)(A), an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

Under F.R.A.P. 46 and the Court's former Local Rule 46, an attorney must be admitted to the Court before practicing before it.

Because Mr. Vialet was a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") applies to conduct through April 1, 2009, and the Rules of Professional Responsibility ("the Rules"), which took effect on April 1, 2009, apply to his conduct on or after that date. Three areas are relevant in this matter. First, former DR 6-101(A) provides that a lawyer shall not:

- "Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it," DR 6-101(A)(1).

- "Neglect a legal matter entrusted to the lawyer," DR 6-101(A)(3).

In the current Rules, the parallel provisions are Rules 1.1(b) and 1.3(b):

> "A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it." Rule 1.1(b).

> "A lawyer shall not neglect a legal matter entrusted to the lawyer." Rule 1.3(b).

Second, former DR 7-101(A) directed that attorneys shall not intentionally:

1. [f]ail to seek the lawful objectives of the client through reasonably available means permitted by law and the Disciplinary Rules;
2. fail to carry out a contract of employment entered into with a client for professional services;
3. prejudice or damage the client during the course of the professional relationship.

Similarly, under the current Rules, a lawyer:

4

- "may exercise professional judgment to waive or fail to assert a right or position of the client, or accede to reasonable requests of opposing counsel, when doing so does not prejudice the rights of the client," Rule 1.2(e);

- "shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under these Rules," Rule 1.3(c);

- "shall not intentionally fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or prejudice or damage the client during the course of the representation except as permitted or required by these Rules," Rule 1.1(c)(1), (2).

Third, the Code and Rules prohibit conduct that involves misrepresentation, that is prejudicial to the administration of justice, and/or that "adversely reflects on the lawyer's fitness as a lawyer." DR 1-102(A)(4), (5), (7); Rule 8.4(b), (c), (d), (h).

According to this Committee's rules, "[a]ny finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the Committee should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* American Bar Association, Standards for Imposing Lawyer Sanctions ("ABA Standards") III(C)(3.0). This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from pro bono or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

## V. The Alleged Misconduct

### A. Failure to Abide by the Court's Scheduling Orders

Most of the allegations against Mr. Vialet concern his failure to abide by the Court's scheduling orders in 31 of 34 cases filed with the Court between 2008 and the date of the Referral Order in 2010. In 11 of those cases, the petitions were dismissed for failure to comply with the Court's scheduling orders, and Mr. Vialet did not seek reinstatement on his clients' behalf. In 10 cases, Mr. Vialet filed briefs or took other action only after the Court issued Orders to Show Cause. In one case, Mr. Vialet filed the petition for review in the Second Circuit, but the proper venue was the Fifth Circuit, and the Court had to expend time and resources to transfer the matter. In the remaining nine

5

23432676v1

cases cited by the Court, briefs were accepted despite late filing or extensions of time granted after the deadline had passed.

In his written submission, Mr. Vialet attributed his failure to adhere to the scheduling orders to the following reasons: (1) poor health; (2) an unmanageable caseload and no support; and (3) short deadlines imposed by the Court's rules. At the hearing, Mr. Vialet's explanation for his alleged deficiencies in complying with scheduling orders focused on his caseload and the fact that he was a solo practitioner with no help. He did not provide any further details about his health issues, stating only that although he is "not in great health," he is able to work.

Mr. Vialet did not offer specific responses to each of the cases listed in the Referral Order but rather chose to address the issue more generally, as described above. Mr. Vialet had some additional observations about certain cases and categories of cases. For example, he noted that in some of the cases that were dismissed by the Court, he was able to reopen the matter before the Board of Immigration Appeals and therefore sought to protect his clients' interests by pursuing alternative relief. *See, e.g., Diallo v. DHS*, 08-0416-ag; *Diallo v. Holder*, 08-4271. With respect to the petition that was filed in the wrong Court, Mr. Vialet explained that the client had been living in New York and moved to Dallas, Texas, less than a year before the petition was filed. Mr. Vialet acknowledged that he should have filed in the Fifth Circuit and acknowledged that he simply made a mistake. With respect to cases in which he filed briefs only after Orders to Show Cause were issued by the Court, Mr. Vialet stated that he "forgot to ask for an extension" and again cited short filing deadlines and his large caseload.

In two of these matters, the Court openly criticized Mr. Vialet's failure to abide by the scheduling orders. *See Barry v. Mukasey*, 08-4027 (the Court noted Mr. Vialet's "indifference to the scheduling orders of this Court"); *Sy v. Holder*, 09-0779 ("Counsel's behavior reflects a disrespect for the Court in the way he has simply ignored our scheduling orders."). Mr. Vialet acknowledged that he had insufficient safeguards in place for remembering deadlines and insufficient systems in place to handle a Second Circuit practice. He claimed that because he had no support, he was required to do his own typing, printing, and copying of the briefs and appendices, which took considerable time. He stated that he has undertaken corrective measures in his office -- specifically, hiring two employees to assist him, using a computerized diary system, and discussing upcoming dates and deadlines with his secretary on a weekly basis. Mr. Vialet added that the Court's implementation of electronic filing has largely alleviated the burdens associated with perfecting his appeals as he is no longer required to print, copy, bind, and file hard copies of the briefs and appendices. He also noted that the rules have been amended to provide more time for him to file briefs after the record is filed.

Additionally, it should be noted that on October 29, 2009, Mr. Vialet was the subject of a client complaint to the Departmental Disciplinary Committee of the First Judicial Department. According to Mr. Vialet, the client filed a complaint after Mr.

6

Vialet advised him of his right to do so following the dismissal of the client's appeal for failure to timely file the appeal before the Board of Immigration Appeals. Mr. Vialet testified at the hearing that he continues to represent the client before the Board of Immigration Appeals, where he was successful in reopening his client's case. Thus, it appears that the client was not prejudiced by the dismissal of his appeal. Additionally, on June 18, 2010, the Departmental Disciplinary Committee closed its case against Mr. Vialet without findings.

Mr. Vialet expressed remorse and apologized for his shortcomings with respect to the Court's scheduling orders. He acknowledged that some clients may have been prejudiced by the dismissal of their petitions due to his failure to comply with the scheduling orders. Mr. Vialet explained that he attempts to contact his clients via telephone and then present them with the decisions of the Court in person, even when the decision is adverse. He mails decisions when he is unable to reach clients by telephone. In response to the Court's and Committee's concern that Mr. Vialet's conduct evidenced disrespect for the Court, Mr. Vialet said that he did not intend any disrespect to the Court. This Committee found Mr. Vialet to be sincere in his respect for the Court and his commitment to his clients and their interests.

This Committee finds that the clear and convincing evidence demonstrates that Mr. Vialet's conduct in failing to comply with the Court's scheduling orders was prejudicial to the administration of justice and "adversely reflects on [his] fitness as a lawyer." DR 1-102(A)(5), (7); Rule 8.4(d). Because Mr. Vialet acknowledged that some of his clients may have been prejudiced by the dismissal of their petitions as a result of his failure to meet scheduling deadlines in the cases where he did not seek reinstatement of the petitions or pursue alternative remedies, his conduct violated DR 7-101(A) and Rules 1.1(c)(1), (2); 1.3(c). Because Mr. Vialet continues to have difficulty complying with the Court's scheduling orders, as discussed below, this conduct warrants a public reprimand. *See, e.g., In re Kuzmin*, 2010 WL 3980018 (2d Cir. 2010) (Court dismissed 28 of 102 petitions for review for failure to comply with scheduling orders); *In re Adinolfi*, 2010 WL 3623152 (2d Cir. 2010) (attorney continued to default on scheduling orders after being put on notice of the Court's concerns); *In re Guttlein*, 378 Fed. App. 24 (2d Cir. 2010) (Court dismissed 32 of 50 petitions for review for failure to comply with scheduling orders).

### B. Poor Briefing

The Referral Order also requested a response regarding poor briefing in six matters. In three of these matters, the Court had publicly criticized Mr. Vialet's briefing and warned that further deficient briefing could result in discipline. *See,.Bah v. DHS*, 07-5301 ("further briefing of this quality may result in discipline"); *Diallo v. DHS*, 08-0556 (same admonition); *Barry v. Mukasey*, 08-4257 ("This is not the first time that Vialet has submitted a brief that we have deemed insufficient." . . . "Vialet is again warned that future briefing of this quality may result in discipline."). In the remaining three matters,

7

the Court noted that Mr. Vialet's failure to challenge the credibility determinations below essentially required denial of the petitions. *See Sy v. DHS*, 08-0664; *Diallo v. Mukasey*, 08-3528; *Sow v. Mukasey*, 08-4609.

In his written submission and at the hearing, Mr. Vialet acknowledged that some of his briefs were inadequate. He again attributed this to his workload, lack of assistance, and time pressures to complete briefs. In at least one of the cases cited in the Referral Order, Mr. Vialet resubmitted a brief of what he believed was better quality. *See Sow v. Mukasey*, 08-4609. Mr. Vialet also asserted that the poorly written briefs were only a small percentage of the total number of briefs he submitted to the Court. He also provided examples of briefs he has submitted to the Court to demonstrate his brief-writing ability. In response to questioning about the similarity of the legal standard and legal arguments in many of his briefs, Mr. Vialet explained that many of his cases concern the same issues, and so, while he recognizes that each case is unique, he said that there often is no reason to change these sections from brief to brief.

The Committee finds that clear and convincing evidence demonstrates that Mr. Vialet's poor briefing violated F.R.A.P. 28 and has not improved. The Committee obtained copies of the briefs that Mr. Vialet filed with the Court in 2010 after receiving the Court's referral order, has reviewed them, and finds that his briefing has not improved. Mr. Vialet has, for example, applied the wrong standard in his analysis *(see, e.g., Diallo v. Holder*, 10-1504, in which Mr. Vialet argues the "well-founded fear" standard applicable to asylum claims despite the fact that the Board of Immigration Appeals found the petitioner's claim to be untimely and therefore applied the more stringent "more likely than not" standard), and continues to come close to waiving any challenge to the agency's adverse credibility findings despite previous warnings from this Court. *Compare Diallo v. Holder*, 10-1504 *with Diallo v. DHS*, 08-0556-ag, 318 Fed. Appx. 39, 40-41 (2009) and *Bah v. Mukasey*, 299 Fed. Appx. 72, 73-74 (2008).

This conduct, together with his failure to abide by the Court's scheduling orders, thus warrants a public reprimand. See *In re Zhang*, 376 Fed. Appx. 104 (2d Cir. 2010) (poor briefing continued post-hearing).

### C. Practice Before the Court Prior to Admission

Although the issue of Mr. Vialet's practice before the Court prior to his admission was not raised in the Referral Order, this Committee was troubled by that apparent practice. He was admitted to practice before the Court on December 30, 2009, and yet he submitted briefs to the Court and appeared for at least one oral argument prior to that date in cases in which he was not admitted *pro hac vice*.

Mr. Vialet explained at the hearing that he had "been trying for years to get admitted" prior to his admission in December 2009. On at least one occasion he had trouble with his sponsors - one turned out not to be admitted before the Court and another

8

withdrew his support. He said that he also had an application returned for failure to pay the correct fee. Mr. Vialet stated at the hearing that he believed his application for admission was pending at the time of his oral argument before the Court in April 2008. He also noted that his submissions to the Court prior to his admission indicated that his application was pending, and he said he had been told that he could file cases with the Court while his application was pending. Mr. Vialet admitted having been criticized by the Court during his April 2008 oral argument because he was not admitted, and he acknowledged that his application may not have been actually pending when some petitions were filed.

Under the former Second Circuit Local Rule 46(d): "Counsel of record for all parties must be admitted to practice before this court. Oral argument may be presented *only* by attorneys admitted to practice before this court. Under exceptional circumstances an attorney may be admitted *pro hac vice*."

As the Court noted in *In re Yan Wang*, 2010 WL 2812824 (2d Cir. 2010) at *7, however,

> "during the relevant time period, some employees of this Court had interpreted this rule as meaning that an attorney litigating before this Court need not be admitted to the bar of this Court unless he or she intended to orally argue the case. We also are informed that attorneys inquiring about the Court's admission requirements were so advised. For purposes of this proceeding, we need not decide whether we agree with that interpretation of the rule. However, we find that a reasonable attorney could have accepted, and acted upon, a Court employee's explicit instruction that admission need not be sought for purposes of filing documents with the Court."

Therefore, crediting Mr. Vialet's testimony that he was told he could file documents while his application was pending, coupled with the rationale of *In re Yan Wang*, the Committee finds that Mr. Vialet's written submissions to the Court prior to his admission was not in violation of the Court's former rule. While his oral argument prior to his admission before the Court was in violation of the Court's rule, in light of the fact that Mr. Vialet was reprimanded by the Court at the time of his oral argument, he has since been admitted and therefore cured this deficiency, and this issue was not raised by the Court in its referral order, the Committee finds that a reprimand is not warranted on this basis.

9

## VI.    Aggravating and Mitigating Factors

There are both aggravating and mitigating circumstances here. *See* ABA Standards 9.22; 9.32.

### A.    Aggravating Factors

A pattern of failing to meet deadlines or failing to apply for an extension before the deadline has passed would be an aggravating circumstance, and an isolated instance would be a mitigating circumstance. *See* ABA Standard 9.22(c) ("a pattern of misconduct"); 9.22(d) ("multiple offenses"). The facts here fall slightly on the side of aggravation. Mr. Vialet provided explanations for some, but not all, of the 11 petitions that were dismissed for his failure to file briefs. Mr. Vialet also provided only a general explanation for his inability to adhere to the scheduling orders in the remaining cases cited in the Referral Order. He acknowledged that some of his clients may have been prejudiced by the dismissal of their cases.

It should also be noted that while he is much improved, Mr. Vialet has continued to miss deadlines with the Court. As of February 1, 2011, he had filed five petitions with the Court after receiving notice of the Referral Order. In two of those matters, he filed his briefs one day late, and in another he filed form C/A only after the Court issued an order dismissing the appeal unless form C/A was filed. *See* dockets for *Diallo v. Holder*, 10-1080 (brief was due on September 15, 2010; brief was filed on September 16, 2010); *Diallo v. Holder*, 10-1504 (brief was due on September 30, 2010; brief was filed on October 1, 2010); *Diallo v. Holder*, 11-0096 (order issued January 25, 2011 dismissing appeal by February 8, 2011 unless form C/A filed; form C/A filed January 25, 2011). There are not yet briefing schedules in the remaining two matters.

### B.    Mitigating Factors

There also are significant mitigating factors in this matter. For example, Mr. Vialet's conduct is significantly mitigated by his evident remorse and by his lack of any selfish motive. *See* ABA Standards 9.22(b). His conduct also is mitigated by his good-faith willingness to cooperate with the Committee. See ABA Standards 9.32(e).

Mr. Vialet provides valuable legal services to an under-served population by focusing predominantly on asylum cases involving West African immigrants. Moreover, Mr. Vialet claims to charge lower fees than other attorneys in the field, which may explain his increased caseload, but also makes him more affordable and accessible to his clients. Additionally, according to his testimony, Mr. Vialet has been very successful; he testified that in his "regular" practice outside the Court he has won approximately 70% of his cases this year. He also has enjoyed some success in the challenging area of female genital mutilation, and, as mentioned above, successfully represented two of the petitioners in the landmark case of *Bah v. Mukasey*, 529 F.3d 99 (2d Cir. 2008).

10

Further, Mr. Vialet has accepted responsibility for the misconduct at issue and has instituted various corrective measures. As noted above, Mr. Vialet has worked as a solo practitioner without any assistance for most of the time of the conduct at issue. Despite being a solo practitioner, according to the character letter from Mr. Gomez, Mr. Vialet assisted his colleague, Manuel Gomez, Esq., by making court appearances on his behalf, and is highly recommended by Mr. Gomez.

The Committee notes that the misconduct described above occurred over a relatively brief period of time, and Mr. Vialet has since made changes to the way his office functions by hiring employees to assist him, utilizing the Court's electronic filing system, and implementing a computerized calendar system in his office where his secretary diaries important dates and deadlines and discusses them with him on a weekly basis. In addition, Mr. Vialet has decreased his appellate caseload and takes fewer Second Circuit cases. He testified that at the time of the misconduct described above, appellate work comprised approximately 20-25% of his practice. He has reduced his appellate workload, which now constitutes only about five percent or less of his practice.

## VII.  Recommendation

The Committee finds, based on clear and convincing evidence, that Mr. Vialet violated F.R.A.P. 46(c); DR 6-101(A) and Rules 1.1(b), 1.3(b); DR 7-101(A) and Rules 1.1(c)(1), (2), 1.2(e), 1.3(c); DR 1-102(A)(4), (5), (7) and Rule 8.4(b), (c), (d). Although Mr. Vialet practiced before the Court without being admitted, crediting his testimony, he believed he could do so because his application was pending and he was actively seeking admission. Accordingly, there is not clear and convincing evidence to support imposition of discipline with respect to F.R.A.P. 46 and former Local Rule 46(d).

It is the Committee's conclusion that Mr. Vialet was not properly equipped to handle the influx of Second Circuit matters that came in to his office -- that is, Mr. Vialet lacked sufficient practical skills, support staff, and experience to adequately follow the Court's rules and properly protect his clients' interests. It also is this Committee's conclusion, however, that because of Mr. Vialet's educational background and his genuine dedication to his clients' needs, Mr. Vialet is indeed capable of competently representing petitioners before the Court. The Committee finds that Mr. Vialet could benefit from continued, and targeted, legal education regarding handling cases at the appellate level and overall law practice management. Consequently, this Committee recommends that the Court require Mr. Vialet to attend and participate in continuing legal education as part of any sanction it may order.

In light of all the factors noted above, the Committee recommends that Mr. Vialet receive a public reprimand from the Court. This Committee further recommends that within six months of the date of any order of the Court, he be required to complete no fewer than six hours of continuing legal education ("CLE") in appellate level advocacy,

11

focusing on immigration, and no fewer than six hours of CLE in law office/practice management from CLE providers accredited by the bar of New York, in addition to the CLE hours required for all attorneys admitted in New York State. This Committee recommends that Mr. Vialet be required to complete these CLE credit hours through in-person attendance at seminars. Mr. Vialet should exercise due diligence in seeking out courses that will provide information and direction for his substantive representation and practical management in federal appellate matters. He should report and provide documentation of his compliance to this Committee's Secretary no later than thirty days after the expiration of the time to complete these CLE credit hours.

Respectfully submitted,

Member of the Committee

12